# EXHIBIT 1

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION - RIVERSIDE

9

10

11

12 | QUINTON GRAY, et al.

13 | Plaintiffs,

14 | v.

15 | COUNTY OF RIVERSIDE,

16 | Defendants.

Case No. EDCV 13-0444 VAP (OPx)

CONSENT DECREE

## Introduction

1.      The parties enter into this Consent Decree to ensure the provision of constitutional health care and to ensure non-discrimination for inmates with disabilities in the Riverside County Jails.[1]  The parties to this Consent Decree are Plaintiffs Quinton Gray, Angela Patterson, Stanley Kujawsky, John Rosson III, Brandy McClellan, Julie Miller, Michael Wolhfeil, David Madrid, and Nikko Quarles and the class and subclasses of inmates they represent, and the Defendant County of Riverside.

2.      This action was filed by Plaintiffs on March 8, 2013.  A Second Amended Complaint was filed on August 20, 2014, and a Third Amended Complaint  on November 24, 2015.  The action alleges that the County of Riverside fails to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United Constitution, as well as discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  On September 2, 2014, the Court denied Defendant's motion to dismiss and granted Plaintiffs' motion for class certification.

3.      The Plaintiff class consists of "all prisoners who are now, or will be in the

---

[1] For the purposes of this Consent Decree, references to the Riverside Jails include the five jails (Presley Detention Center, Smith Correctional Facility, Southwest Detention Center, Indio Jail, and Blythe Jail) as well as the Riverside University Medical Center, to the extent it houses inmates under the jurisdiction of the Riverside County Sheriff, and any new structures designated to house prisoners under the jurisdiction of the Riverside County Sheriff subsequent to the date of this Consent Decree.

1

future, subjected to the medical and mental health policies and practices of Riverside County."  The medical subclass comprises "[a]ll prisoners who are now, or will in the future be, subjected to the medical care policies and practices of the Riverside Jails" and the mental health subclass comprises "[a]ll prisoners who are now, or will in the future be, subjected to the mental health care policies and practices of the Riverside Jails."  In addition, the parties hereby stipulate to an additional subclass of  all prisoners who are now, or will be in the future, subjected to policies and practices of the Riverside jails regarding specialized or sheltered housing for prisoners due to their mobility impairments and need for assistive devices, and the provision and confiscation of accommodations for prisoners with mobility impairments, and agree that this class meets the requirements of Rule 23(a) and (b) of the federal Rules of Civil Procedure.

4.     In January 2015, the parties suspended regular and expert discovery for the purpose of settlement negotiations.  To aid in settlement negotiations, the parties agreed on February 20, 2015, to hire neutral experts "to determine whether the health care currently provided poses a significant risk of serious harm to prisoners confined in the Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the U.S. Constitution."  Should the experts determine that health care does fail to meet the constitutional minimum, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies, including a commitment to secure funding necessary for implementation of the Remedial Plan and a timeframe for implementation.  The parties further agreed that the Court would retain jurisdiction to

2

enforce the terms of its judgment and Plaintiffs would be prevailing party.

5.     The parties jointly selected Dr. Scott Allen, Professor of Medicine at the University of California-Riverside, as the expert on medical care and Dr. Bruce Gage, Chief Psychiatrist of the Washington State Department of Corrections, as the expert on mental health care.  The parties directed them to begin their work on March 3, 2015.

6.     Both experts conducted extensive tours and reviews of the jail facilities, policies and procedures as well as interviews with staff and inmates.  They drafted preliminary reports setting forth their findings and recommendations, and both parties were given the opportunity to review the reports and make comments.  The experts submitted their final reports to the parties on July 15, 2015.

7.     Each party to this Consent Decree was represented by counsel during its negotiation and execution.  Plaintiffs and the Plaintiff classes and subclasses are represented by Donald Specter and Sara Norman, Prison Law Office, and Shawn Hanson and Danielle Ginty, Akin Gump.  Defendant is represented by Arthur Cunningham, Lewis Brisbois Bisgaard & Smith, and James Brown, Assistant County Counsel for the County of Riverside.

8.     Through this Consent Decree, Defendant agrees to implement the measures set forth in the Remedial Plan attached as Appendix A, subject to monitoring by the Court experts and Plaintiffs' counsel, negotiation between the parties, and if necessary, enforcement by the Court.

**Remedial Plan**

9.     Defendant shall fully implement all of the remedial measures, according to the specified timeframes, set forth in the Remedial Plan attached as Appendix A. Defendant shall secure the funding necessary to implement the Remedial Plan.  The Remedial Plan is designed to meet the minimum level of health care necessary to fulfill Defendant's obligations under the Eighth and Fourteenth Amendments, as well as to ensure non-discrimination against inmates with disabilities in the areas addressed by the Plan, as required by the ADA and Section 504 of the Rehabilitation Act.

10.     Defendant shall, in consultation and collaboration with Plaintiffs' counsel, develop and implement appropriate and adequate plans, policies, and practices to ensure compliance with the Remedial Plan.  At least 30 days prior to finalizing or implementing any new plans or policies developed to meet the terms of the Remedial Plan, Defendant will submit such plans or policies to Plaintiffs' counsel for their review and comments.  Disagreements about the adequacy of such plans or policies shall be resolved pursuant to the dispute resolution procedure set forth below.

11.     Defendant may seek to modify the Remedial Plan if they believe in good faith that there is a significant change in the facts or the law such that the terms of the Remedial Plan will not effectively accomplish the goals set forth in Paragraph 1. Defendant's violations.  Plaintiffs may seek to modify the Remedial Plan if the plan does not effectively accomplish those goals, or a modification is necessary to ensure Plaintiff class members receive adequate healthcare under the Eighth and Fourteenth

4

Amendment to the United States Constitution or to ensure that inmates are not subjected to disability discrimination under the ADA and/or Section 504 of the Rehabilitation Act in the areas covered by the Plan.  Any party wishing to modify the plan must submit a proposed modification to the opposing party.  The opposing party may request further information, request that the modification(s) be reviewed by the Court's experts, and/or request that the proposed modification(s) be subjected to the dispute resolution process described below.  If the parties fail to reach agreement on the proposed modification(s), the party proposing the modification(s) may seek relief from the Court.

12.    Within 180 calendar days of the date this Consent Decree is approved by the Court, Defendant shall provide to Plaintiffs' counsel a status report stating whether it is complying with the terms of this Consent Decree.  This report shall include a description of the steps that Defendant has taken to implement the Remedial Plan.  At the end of each subsequent 180-day period during the pendency of this Consent Decree, Defendant shall provide to Plaintiffs' counsel a status report addressing each item of the Remedial Plan and shall specify each and every item with which it is not in compliance.

**Court Experts**

13.    The parties jointly request the appointment of Drs. Gage and Allen as Court experts pursuant to Rule 706 of the Federal Rules of Evidence to advise the Court on the County's compliance or non-compliance with the  Remedial Plan, dispute resolution matters addressed in paragraph (4), and testimony, if required, as addressed in paragraph (6), below.  .  During the first year of this Consent Decree, the Court experts shall complete

5

two comprehensive reviews and reports, at least four months apart, to advise the parties

and the Court on Defendant's progress in implementing the Remedial Plan.  For the

remaining duration of this Consent Decree, the Court experts shall complete

comprehensive reviews and reports as they determine to be necessary, or as requested

by the parties, but not more than twice in one year, to advise the parties and the Court

on Defendant's compliance or non-compliance with the Remedial Plan.  These

comprehensive reviews and reports shall be considered separate and apart from any

evaluations and reports prepared as part of the dispute resolution process described

below.

14.     The experts' duties specified in Appendix B shall be provided to the

experts pursuant to Rule 706(b).  The Court experts shall be entitled to reasonable

compensation in an amount approved by the Court, which shall be paid by Defendant.

15.     The Court experts shall have reasonable access to all parts of any Riverside

Jail, with appropriate notice, and access to the facilities will not be unreasonably

restricted.  The experts shall have access to correctional and health care staff and

inmates, including confidential and voluntary interviews as they deem appropriate.  The

experts shall also have access to documents, including budgetary, custody, and health

care documents, and institutional meetings, proceedings, and programs to the extent the

experts determine such access is needed to fulfill their obligations.  The experts' tours

shall be undertaken in a manner that does not unreasonably interfere with jail operations

as determined by jail administrators.

6

16.     The parties agree that they are each entitled to engage in ex parte communications with the Court experts.  However, all of the experts' findings and recommendations shall be set forth in writing in their reports.

17.     If for any reason either one is not appointed or can no longer serve, the parties shall attempt to agree on who shall be appointed in their place.  If the parties do not agree, Defendant and Plaintiffs shall each nominate and submit two potential experts to be chosen and appointed by the Court.

**Notice to Class Members**

18.     Defendant shall post notices of this action in a manner agreed upon by the parties.  Such notices shall include a brief description of Plaintiffs' claims, the definition of the classes and subclasses, that the parties have entered into a Consent Decree to ensure constitutional medical and mental health care for the Plaintiff class, as well as to ensure non-discrimination as to inmates with disabilities in certain areas, and the contact information for the Prison Law Office to allow inmates to contact Plaintiffs' counsel.

**Plaintiffs' Monitoring and Access to Information**

19.     Plaintiffs shall monitor Defendant's compliance with the Remedial Plan. Plaintiffs shall inform Defendant of alleged noncompliance with any aspect of the Remedial Plan.  Defendant shall investigate alleged failures and provide Plaintiffs with a response in writing within 30 calendar days.  If Plaintiffs are not satisfied with Defendant's response, the parties shall engage in the dispute resolution process described below.

20.    Defendant shall provide Plaintiffs with access to information, including all Riverside Jail facilities, documents, records, and staff, that Plaintiffs believe in good faith is necessary to monitor Defendant's compliance with the Remedial Plan.  From the date this Consent Decree is entered by the Court, Defendant shall provide Plaintiffs with access to such information within 15 calendar days of their request.  If Defendant believes that the information requested by Plaintiffs is not necessary to monitor compliance with the Remedial Plan, the parties shall engage in the dispute resolution process described below.

21.    Defendant shall grant Plaintiffs and their consultants the opportunity to conduct at least two tours of the Riverside Jails per calendar year for the purpose of monitoring compliance with the Remedial Plan.  Tours by Plaintiffs and/or their consultants shall include reasonable access to all of the jail facilities, including all housing units, facilities where health care services are provided, facilities where inmates with disabilities are or may be housed and provided programming, and any other facilities where services are provided pursuant to the Remedial Plan.  During the tours, Defendant shall make available for interview any supervisory, clinical, custodial, and program staff that have direct or supervisory responsibility for health care and disability accommodations.  Defendant shall provide a Sheriff's Department contact person to ensure cooperation of institution staff with Plaintiffs in obtaining information they request during the tours.  During the tours, Defendant shall permit and facilitate Plaintiffs having confidential and voluntary discussions with any inmate identified by

8

Plaintiffs.  Upon request by Plaintiffs and pursuant to the protective order entered in this case, Defendant shall make available for inspection and/or copying the health care and/or custody files of specified inmates.

22.    In the event that Defendant fails to make the employee or an agent requested by Plaintiffs available for an interview, the parties shall seek a determination from Judge Raul Ramirez by telephone as to whether Plaintiffs may depose the employee or agent who has not been made available.  The parties agree that should such a deposition be required, the employee or agent shall be compelled to attend by subpoena, and the deposition may be taken in Riverside County without further leave of the Court.

23.    Plaintiffs' counsel retain the ability to interview their clients pursuant to regular attorney-client visiting procedures established by the Sheriff's Department.  The parties will attempt to establish an efficient means to allow Plaintiffs' counsel confidential telephonic interviews with individual inmates, with reasonable notice, in a manner that does not disrupt jail operations.

24.    Plaintiffs' counsel shall be allowed to send postage pre-paid envelopes to their clients in the Riverside Jails.

**Individual Advocacy**

25.    Plaintiffs may bring individual inmates' health care or disability accommodation concerns to the attention of Defendant's counsel, or their designee, who shall respond in writing within seven calendar days.  This process is not meant to

9

replace or circumvent the existing processes for requesting medical or mental health services, or the existing grievance processes.  Inmates will be encouraged to make use of those processes except where exigent circumstances or failures of those processes have occurred.

**Dispute Resolution**

26.     At the request of any party, the parties shall conduct good faith negotiations to resolve informally any matter in dispute, including but not limited to any contention that Defendant is not substantially complying as required by this Consent Decree or the Remedial Plan(s), or any contention that Defendant has demonstrated sufficient compliance with the Consent Decree and/or Remedial Plan(s) that the Consent Decree and monitoring thereunder should be modified or terminated.  Any party may begin this dispute resolution process by telephonic notice to the opposing party.  The parties shall speak on the telephone or in person to attempt to resolve the dispute.

27.     If the parties are unable to resolve the dispute within 30 days of the original notice, either party may inform the relevant Court experts of the area of disagreement and request that the experts evaluate the issue and prepare a report.  The experts must provide their report regarding the area of disagreement within 30 days of the request. Defendant will pay the experts' reasonable fees for any reports prepared by a Court expert at the request of a party about a disputed issue, as contemplated by this paragraph.  Any report prepared by a Court expert at the request of a party about a disputed issue, as contemplated by this paragraph, shall be admissible as evidence at the

10

request of any party in any judicial proceeding in this case, subject to appropriate objections pursuant to the Federal Rules of Evidence.

28.     If within 30 calendar days of receipt of the Court experts' report, the parties are unable to reach a mutually satisfactory resolution of the dispute, either party may request mediation with Judge Raul Ramirez.  The form of the mediation (whether in person or by telephone, timeframes, and any briefing to be provided) shall be established by Judge Ramirez after consultation with the parties.

29.     If mediation with Judge Ramirez does not resolve the dispute to the mutual satisfaction of the parties, either party may file a motion for relief to the Court of continuing jurisdiction.

**Enforcement**

30.     The Court shall retain jurisdiction to enforce the terms of this Consent Decree, and shall have the power to enforce the agreement through specific performance and all other remedies permitted by law until Defendant fulfills its obligations under this Consent Decree.

**Duration and Termination**

31.     The duration of this Consent Decree is four years from the date this Consent Decree is entered by the Court, except that this time period may be extended as to any provision of this Consent Decree with which the Defendant is not in substantial compliance for so long as substantial non-compliance persists.  Any such extension not mutually agreed upon by the parties shall be subject to the dispute resolution process set

11

forth above.

32.     Defendant shall not file a termination motion pursuant to 18 U.S.C. § 3626(b)(1)(A)(i) for three years from the date this Consent Decree is entered by the Court.  Any termination motion shall be based on a record of no less than one year of substantial compliance with all the requirements of this Consent Decree and the Remedial Plan.

33.     Defendant may request a finding that Defendant is in substantial compliance with the Remedial Plan or a material component (defined as one of the (20) subparts of the Remedial Plan) thereof and has maintained substantial compliance for a period of twelve months. Such a finding will result in a reduction or suspension of monitoring of that material component. If Plaintiffs present evidence that Defendant is no longer in substantial compliance with material component(s) previously found in substantial compliance, the Court may order additional relief including but not limited to reinstating full monitoring.

**Costs and Fees**

34.     **Costs and Fees For Monitoring and Enforcement**:  Plaintiffs shall be compensated for their reasonable time and reasonable expenses relating to monitoring and enforcing this Consent Decree and Remedial Plan.  For monitoring fees and expenses, Plaintiffs shall submit a detailed invoice for their fees and expenses (including the date, amount of time spent, and a general description of each task) at the end of every quarter and Defendant shall pay the amount requested by Plaintiffs within 60

12

calendar days of receipt of each invoice, provided that Defendant need not pay any fees

and expenses that exceed $150,000 per calendar year.

35.     In addition, and notwithstanding the monetary limit set forth above,

Defendant agrees to pay Plaintiffs' counsel for reasonable time and expenses in

connection with efforts to resolve informally or through mediation or litigation any

dispute related to this Consent Decree and Remedial Plan, subject to Defendant's right

to dispute any such request for compensation, as provided in the dispute resolution

mechanism set forth above.

36.     For any tasks related to monitoring and enforcing this Consent Decree and

Remedial Plan that relate to health care, Defendant shall pay Plaintiffs at hourly rates set

forth under the PLRA, 42 U.S.C. Section 1997e.  For any tasks related to monitoring

and enforcing this Consent Decree and Remedial Plan that relate to ensuring non-

discrimination based on disability, Defendant shall pay Plaintiffs pursuant to the ADA

and Section 504 of the Rehabilitation Act.

37.     **Costs and Fees Prior to Entry of the Consent Decree:**  The parties agree

that, by entry of this Consent Decree, Plaintiffs are the prevailing party in this litigation.

As a result, Defendant agrees to pay Plaintiffs their reasonable fees and costs, subject to

the provisions of the PLRA, 42 U.S.C. Section 1997e, including its limitations as to

hourly rates as applicable.  Defendant agrees to pay Plaintiffs $1,250,000 for reasonable

fees and expenses incurred through Final Approval of the Consent Decree, including

approval of all Remediation Plan(s). The parties acknowledge that Court approval of the

13

fees and expenses is required.

**Liability and Necessity for Relief**

38.     Defendant admits for the purpose of this lawsuit only that there exists probable cause to believe that violations of the federal rights of plaintiffs have occurred sufficient to warrant the relief contained herein.  The parties agree that the relief contained herein is narrowly drawn, extends no further than necessary to ensure the protection  of the federal constitutional and statutory rights of Plaintiffs, and is the least intrusive means necessary to accomplish those objectives.

**IT IS SO AGREED AND STIPULATED**.


DATED: November 24, 2015           LEWIS BRISBOIS BISGAARD & SMITH LLP


                                   By:       /s/ Arthur K. Cunningham
                                         Arthur K. Cunningham
                                         Attorneys for Defendant,
                                         COUNTY OF RIVERSIDE


**IT IS SO AGREED AND STIPULATED**.

DATED: November 24, 2015           PRISON LAW OFFICE


                                   By:       /s/ Sara Norman
                                         Sara Norman
                                         Attorneys for Plaintiffs

14

# ORDER

Pursuant to the stipulation of the parties and following careful review of the expert reports filed under separate cover and the Third Amended Complaint, the Court hereby certifies a subclass of all prisoners who are now, or will be in the future, subjected to policies and practices of the Riverside jails regarding specialized or sheltered housing for prisoners due to their mobility impairments and need for assistive devices, and the provision and confiscation of accommodations for prisoners with mobility impairments.

Pursuant to the stipulation of the parties  and following careful review of the expert reports filed under separate cover, and as mandated by 18 U.S.C. Section 3626, the Court hereby finds that the remedy set forth herein is narrowly drawn, extends no further than necessary to correct the violation of the federal rights, and is the least intrusive means necessary to correct the violation of the federal rights.

Therefore and good cause appearing, the Court approves this Consent Decree, orders the parties to comply with all its terms, and orders Defendant to implement the attached Remedial Plan pursuant to the schedule set forth therein.

**IT IS SO ORDERED.**

Dated:

_____
The Honorable Virginia A. Phillips
U.S. District Court Judge

# APPENDIX A

*Gray v. County of Riverside*

**Remedial Plan**

Pursuant to the Consent Decree of November 25, 2015, the County of Riverside hereby agrees to implement the following measures to ensure the provision of constitutional health care and to ensure non-discrimination for inmates with disabilities in the Riverside County Jails as set forth in the plan.

I.    **Health care generally**

A.    **Intake screening**

1.    All inmates who are to be housed shall be screened on arrival in custody by Registered Nurses (RNs).  RN screening shall take place prior to placement in jail housing. At the Blythe Jail, if RNs are not on duty at time of booking, the inmate shall be seen and screened by an RN within 14 hours of booking.

2.    Health care intake screening shall take place in a setting that ensures confidentiality of communications between nurses and individual inmates. Custody staff may maintain visual supervision but may not be close enough to overhear communication, unless security concerns based on an individualized determination of risk which includes a consideration of requests by the health care staff require that custody staff be closer at hand.

3.    The County shall revise the contents of its intake screening consistent with Dr. Gage's recommendations regarding nursing observations and suicidality and shall implement the revised procedures within one month of the date the Consent Decree is issued by the Court.

4.    The County shall establish a procedure to ensure that inmates entering the Riverside jails who are taking psychotropic medications are prescribed and offered those medications, or such medications as deemed medically

1

necessary by the facility psychiatrist, within 48 hours of booking, and shall implement the procedure within one month of the date the Consent Decree is issued by the Court.

**B.      Timely access to care**

1.      Custody and health care staff shall make health care  request forms available to inmates in all housing units, dayrooms, program rooms and libraries.

2.      Locked boxes shall be placed in all housing units for inmates to submit health care request forms.  The boxes shall be readily accessible to all inmates.  The boxes shall be emptied by health care staff at least once every 24 hours.  Health care staff shall also pick up completed health care request forms directly from inmates in sheltered housing at least once every 24 hours or if an inmate does not have the opportunity to deposit the request in the locked box.  Health care staff shall collect completed health care request forms.  When institutional security prevents health care staff from entering the dayroom, custody staff may collect the request forms so long as health care staff are present, observe the collection, and receive the forms directly from the custody staff.

3.      The following procedures regarding completed health care request forms shall be followed:

(a)      Health care staff shall collect health care request forms at least once every 24 hours from every locked box.  RNs shall triage the forms the same day as collection.  Qualified mental health practitioners shall triage health care request forms that seek mental health treatment the same day as collected from the lockboxes, and within 24 hours of collection by the health care staff if hand-delivered to

2

staff.  The date and time of triage shall be recorded as documented upon entry into the EHR.

(b)     All inmates with emergency (sudden, unexpected development requiring immediate action) health care concerns shall be seen by an RN immediately upon review of the request form if not before.  All inmates with urgent concerns (where treatment may be delayed a short period of time without substantial risk of death or serious injury) shall be seen by an RN the same day the form is triaged. When a request describes a clinical symptom, a face to face encounter between the inmate and qualified health care professional at an RN level or higher shall occur within 48 hours (72 hours on weekends).

(c)     When a nurse determines follow-up is necessary, the inmate shall be referred to a physician, physician's assistant, or nurse practitioner for a face to face evaluation that takes place immediately for emergent concerns (unless the inmate has been transported from the facility for hospital or emergency room care), within 24 hours for urgent concerns (unless the inmate has been transported from the facility for hospital or emergency room care), and within 14 calendar days for routine concerns.

(d)     These procedures shall apply to medical, mental health, and dental concerns.  Dental and mental health staff shall be provided health care requests raising dental and mental health concerns in a timely manner, with routine dental care to be provided within four weeks of request, to allow compliance with these time frames.

4.      The County shall track and regularly review times for (a) collection of health care request forms; (b) triaging of health care request forms; (c)

3

nursing sick calls; and (d) clinician sick calls, to ensure that the required time frames are being met.

5.    Providers may make referrals for follow-up appointments without requiring inmates to file a health care request form.

6.    In cases where the inmate requires an accommodation to assist in completing a health care request form, health care staff shall provide writing assistance to inmates on request.

7.    When inmates alert staff to medical or psychiatric emergencies either for themselves or another inmate ("man down"), the inmate shall be seen in person or interviewed over the telephone by health care staff at an RN level or higher as soon as possible.

8.    With the exception of telemedicine appointments, all nursing sick call and provider encounters shall occur in a room with an examination table, sink, proper lighting, proper equipment, and with a medical record or medical record access. All such encounters shall take place in confidential settings, where staff and patients communications cannot be overheard by custody staff or other inmates, unless security concerns prohibit health care staff from being alone with an inmate due to a documented record of threats, intimidation or violence toward staff or other inmates or an individualized determination of risk which includes a consideration of requests by the health care staff.  All telemedicine appointments shall occur in a room with the appropriate equipment and space for the patient and health care staff at the jail, as well as any needed computer or records access.  The same confidentiality provisions shall apply.

C.      **Medication administration**

1.      The County shall provide pill call twice a day in each housing unit, at
        regular times that are consistent from day to day, except as may be required
        by non-routine facility security concerns.  The County shall develop and
        implement policies and procedures to ensure that prescribed medications
        are provided at therapeutically appropriate times as determined by the
        ordering physician.  Any inmate who requires administration of
        medications at times outside the regular pill call shall be provided that
        medication at the times determined by the ordering physician.

2.      The County shall develop and implement policies and procedures to ensure
        that inmates are provided medications at therapeutically appropriate times
        when out to court, in transit to or from any outside appointment, or being
        transferred between facilities.   If administration time occurs when an
        inmate is in court, in transit or at an outside appointment, medication will
        be administered as close as possible to the regular administration time.
        When the administration is identified as an allowable keep on person
        medication, the medication shall be given to the inmate for self-
        administration at the appropriate time.

3.      The County shall develop and implement policies and procedures to ensure
        that medication efficacy and side effects are monitored by staff and
        reviewed by appropriate clinicians at appropriate intervals.

4.      The County shall explore the expansion of its Keep on Person (KOP)
        medication program.

**5.**  Prescriptions are filled by the Riverside University Medical Center
        (RUMC) pharmacy on weekdays.  In addition, every jail shall maintain a
        stock supply of medications, as determined by the Medical Director and the
        Pharmacy and consistent with California State Board of Pharmacy

5

regulations for newly arrived patients or missed deliveries.  Where
normally established medication delivery times would compromise the
medical care of the inmate, staff shall call the RUMC pharmacy emergency
call line to obtain medications by the following day.

**D.    Confidentiality**

1.    The County shall develop and implement policies and procedures to ensure
that appropriate confidentiality is maintained for health care services.  The
policies shall ensure confidentiality for clinical encounters, including health
care intake screening, pill call, nursing and provider sick call, specialty
appointments, and mental health treatment.  The policies shall also ensure
confidentiality for written health care documents, such as health care needs
requests, grievances raising medical care or mental health care concerns,
and health care records.

2.    The Sheriff's Department is responsible for tracking the filing and
disposition of inmate grievances, medical or otherwise. Appropriately
trained custody staff who are subject to the same patient confidentiality
requirements shall process medical and mental health grievances.

3.    The County will no longer affix a label to doors of holding cells that
indicates mental health status of inmates held inside (such as "PSYCH");
instead, the County will use wristbands, covered clipboards, or other means
of identification that are accessible to appropriate staff on a need-to-know
basis but not readily discernable to others.

**E.    Health care records**

1.    The County shall provide an Electronic Health Record System which
allows mental health and medical staff to view the medical and mental

health information about each patient in a single record. This shall be accomplished within 12 months of the date the Consent Decree is issued by the Court.

2. Until such a system is implemented, the County shall develop and implement policies and procedures to ensure that medical staff have access to mental health information and mental health staff have access to medical information, as needed to perform their clinical duties. Medical and mental health staff shall be trained in these policies and procedures within one month of the date the Consent Decree is issued by the Court.

3. The County shall develop and implement policies and procedures to monitor the deployment of the CHS Electronic Health Records to ensure the records system is modified, maintained, and improved as needed on an ongoing basis, including ongoing information technology support for the network infrastructure and end users.

**F.      Staffing**

1. The County shall provide and maintain sufficient staff to execute the health care components of the Remedial Plan. At least 90% of each medical and mental health care staffing category set forth in Exhibit A shall be filled, with staff attending work (and not on leave or otherwise not regularly attending work) within 12 months of the date the Consent Decree is issued by the Court. The County shall take such steps as are needed to fill these positions.

2. All health care staff shall provide community standard of care in their respective roles. Primary care physicians hired from the date of the issuance of the Consent Decree shall be Board certified or Board eligible in either Internal Medicine or Family Medicine or Emergency Medicine. Any

7

primary care physician currently working in the jails at the time the Consent Decree is issued will have three years from that date to become Board certified or eligible in one of those practice areas.  As of three years from the date of the issuance of the Consent Decree, all physicians working in the jails shall be Board certified or eligible in one of those three practice areas.  For the duration of the employment of any physicians who are neither Board certified nor Board eligible in those three practice areas, the Medical Director will provide quarterly supervision.

3. The County shall annually reassess its medical and mental health care staffing to ensure that it employs sufficient staff necessary to provide adequate medical and mental health care and supervision.  The annual assessments shall review all categories of health care staff, including but not limited to the following: medical providers (physicians, physicians' assistants, and nurse practitioners), psychiatrists, clinical therapists, registered nurses, licensed vocational nurses, nurse supervisors, health care records clerks and technical support staff.  The assessment shall include a review of key measures such as compliance with chronic care guidelines, sick call triage, medication refusals, delays in prescription renewals, compliance with daily pill call policies, and wait times to see nurses and providers.  If any category is filled at less than 90%, the assessment shall review the hiring and retention process to ensure that appropriate steps are in place so as to fill the positions.  If any category has been filled at less than 80% for three or more consecutive months, the County will take all steps required to fill the vacancies within 12 months, included, if required, adjustments to compensation.   Pending hiring of permanent staff, the County shall take all necessary steps to fill the vacancies with temporary staff so that the category is filled at 80% or higher within three months.

8

4.      The County shall employ adequate numbers of custody staff to assist with medication administration and the movement of inmates to receive health care services.  Custody staff performing health care functions shall be included in the annual assessment.

**G.      Custodial environment**

1.      It is the intent of the County to provide inmates with as much dayroom time as is consistent with institutional safety and security.  Under ordinary circumstances, dayroom time will begin no later than 8 a.m. and conclude at 11 p.m., except for cell returns or for unusual occurrences such as a group disturbance or institutional emergency that require temporary suspension of dayroom access that shall last only so long as needed to ensure safety and security, as determined by the appropriate supervisor.

2.      Inmates shall be offered time in the recreation area at least two times each week for at least 1.5 hours at a time unless there are unusual occurrences such as a group disturbance or institutional emergency that require temporary suspension of recreation access that shall last only so long as needed to ensure safety and security, as determined by the appropriate supervisor.

3.      The County shall develop and implement training to help custody staff identify inmates who self-isolate in order to refer such inmates, along with those who have recently received lengthy sentences, to mental health staff.

4.      Inmates shall be classified according to the Sheriff's Department's corrections classification policy.  The County shall not place inmates in more restrictive custody solely because they use assistive devices, or have a mental illness or other disability.

5.      Inmates who are receiving mental health services and are housed in administrative segregation shall be evaluated daily by mental health staff at the clinical therapist level or higher.  Any inmate not already receiving mental health services who is classified, at time of booking or at any later re-classification, to administrative segregation shall be referred forthwith to mental health services and evaluated by mental health services at the clinical therapist level or higher within 48 hours of housing.  Any inmate so classified who is receiving prescription medications will receive those medications from medical staff at the cell in lieu of dayroom pill call.  Any inmate who reports or demonstrates decompensation or distress shall be seen by the appropriate clinician within 24 hours, who shall confer with custody staff (medical liaison lieutenant, or facility commander or his/her designee) to determine if alterations to the inmate's placement and living conditions are appropriate.  Assignment to administrative segregation will be re-evaluated every 30 days.

## II.   Medical care

### A.   Chronic care

1.      Within three months of the date the Consent Decree is issued by the Court, the County shall develop and implement a chronic disease management program that is consistent with national clinical practice guidelines.  The chronic disease program will include procedures for the identification and monitoring of such inmates and the establishment and implementation of treatment plans consistent with national clinical practice guidelines.

2.      Inmates who take medications for their chronic conditions shall have the medications automatically renewed unless the provider determines that it is necessary to see the inmate before renewing the medication.  In that case,

the inmate shall be scheduled to be seen in a reasonable time period to allow medication continuity.

3. The County shall track compliance with the chronic disease management program requirements for timely provision of appointments, procedures, and medications.

**B.      Specialty care**

1. Within three months of the date the Consent Decree is issued by the Court, the County shall develop and implement policies and procedures to ensure that emergency consultations and procedures, as determined by the medical provider, are provided immediately; high priority consultations and procedures, as determined by the medical provider, are provided within 21 calendar days of the date of the referral; and routine consultations and procedures, as determined by the medical provider, are provided within 90 calendar days of the date of the referral.

2. Inmates whose routine specialty consultation or procedure exceeds 90 calendar days from the date of the referral shall be examined by a clinician monthly and evaluated to determine if urgent specialty care is indicated.

3. Within five calendar days of the completion of a high priority specialty consultation or procedure or within 14 calendar days of a routine specialty consultation or procedure, inmates returning to the Riverside jails shall have their specialty reports and follow up recommendations reviewed by a jail nurse practitioner, physician's assistant or physician.  A nurse, nurse practitioner, physician's assistant or physician will review this information with the inmate within 14 calendar days of the receipt of the results.

4. Specialty care consultations shall be tracked in a log that identifies the consultation request date, the date the consultation was sent to the specialty

11

care provider, the date the consultation is scheduled, the date the appointment takes place, and, if the appointment is rescheduled or canceled, the reason it was rescheduled or canceled.

5.    Requests for specialty consultations shall also be tracked to determine the length of time it takes to grant or deny the requests and the circumstances and reasons for denials.  At least twice a year, the County shall review the specialty consultation log to determine whether such care is provided in a reasonable time frame.  If any specialty area has a record of untimely appointments as determined by the Correctional Health Service Continuous Quality Improvement Committee, the County shall explore alternative providers.

**C.    Utilization management**

1.    The County shall implement a system for utilization management to track any request or recommendation for medical care that is not provided.  The decision to refuse specialty care, specialized treatment or non-formulary medication shall be made by the Administrator of Correctional Health Services in conjunction with the Medical Director of Correctional Health Care and the Medical Director of Riverside University Medical Center.

2.    The County shall implement an institutional decision-making process, to ensure that any refusal of specialty care, specialized treatment, or non-formulary medication is made by the Administrator of Correctional Health Services in conjunction with the Medical Director of Correctional Health Care and the RUMC Medical Director.

**D.   Continuous quality improvement program**

1.   Clinicians (physicians, physicians' assistants, and nurse practitioners) shall be evaluated annually by peer review, and nurses shall be evaluated annually by their supervisors.

2.   A Quality Improvement Committee that includes the Correctional Health Service Administrator and Medical Director, a mental health representative, a registered nurse, a pharmacy representative, and a Sheriff's Department representative shall meet quarterly for the purpose of systematically monitoring, analyzing and improving processes and the quality of medical care.

3.   Each quarter, the Quality Improvement Committee shall monitor several of the following processes of care, ensuring that all are reviewed at least annually, and that appropriate corrective action is recommended for all deficiencies:

(a)   Number of intake screenings performed and number of inmates who did not receive intake screening prior to housing;

(b)   Number of health needs requests submitted monthly, number triaged the same day as collection, number of emergent conditions, number of emergent conditions seen immediately, number of urgent conditions, number of urgent conditions seen the same day the form is triaged, number who received visits with providers within 14 calendar days of receipt of the form, and number of "man down" situations responded to;

(c)   Triage decisions: the number of inmates indicating a clinical symptom in their health care request that were not seen by an RN in 48 hours/72 hours on weekends;

13

(d)     The percent of inmates who did not receive their first dose of essential medication as determined by the medical provider within 24 hours of prescription;

(e)     The percentage of inmates with medication lapses due to untimely renewals;

(f)     The number of inmates verified as already on psychotropic medications at booking who do not receive their medications within 48 hours of a physician or psychiatric prescription order during intake (or, if a physician or psychiatrist does not order such medications during intake, who were not seen by the physician or psychiatrist within 24 hours of booking);

(g)     The number of inmates who claim to be taking psychotropic medications at the time of booking for whom staff did not take reasonable steps to verify the prescription as set forth in Section III.A.2;

(h)     The length of time from initial clinician referral to completion of specialty appointment by service;

(i)     The number of inmates with chronic illnesses who did not receive their medications as determined by the medical provider within a day of the physician or psychiatrist's medication order;

(j)     The number of inmates with chronic illnesses who did not receive a history and physical examination by a registered nurse, physician's assistant, nurse practitioner or physician within two weeks of intake;

(k)     Grievances over health care complaints and institutional responses;

(l)     Court orders for health care and institutional responses.

4.     The Administrator shall ensure that any corrective action recommended by the Quality Improvement Committee is implemented and completed within

14

30 days of the report making such recommendations, unless there are extenuating circumstances preventing implementation and completion within such timeframe in which case it shall occur as soon as reasonably practical.

**E.      Treatment space**

1.      The County shall provide adequate clinical space in every facility to support clinical operations while also securing appropriate privacy for patients.

2.      Adequate clinical space includes the space needed reasonably to perform clinical functions as well as an examination table, sink, proper lighting, proper equipment, and access to health care records.

**F.      Reviews of in-custody deaths**

1.      Preliminary reviews of in-custody deaths shall take place within 30 days of the death and shall include a written report of the circumstances and events leading to the death, with the goal to identify and remedy preventable causes of death and any other potentially systematic problems.

2.      Mortality reviews shall include detailed assessment of events occurring prior to the death, an analysis of any acts or omissions by any staff or inmates which might have contributed to the death, and the identification of problems for which corrective action should be undertaken.

3.      Psychological autopsies shall be part of all reviews involving any suspected death by suicide.

**III.      Mental health care**

**A.      Treatment**

15

1.    Within six months of the date the Consent Decree is issued by the Court, the County shall develop and implement a Mental Health Program Guide that conforms to contemporary community standards of care, setting forth a system of treatment to include thorough assessments and structured treatment, including face-to-face clinical contacts, group therapy, and individualized courses of therapy as clinically indicated.  The Program Guide shall address treatment for inmates in the designated mental health housing units as well as outside those units.

2.    The County shall ensure that all inmates who enter the Riverside jails who are verified as currently on psychiatric medications are offered such medications within 48 hours of booking or, if the physician chooses not to order the medication, shall be seen by a physician or psychiatrist within 24 hours of booking.  Staff shall take reasonable steps to verify current prescriptions during intake through the County's electronic mental health records, telephone calls to pharmacies or practitioners, or paper prescriptions provided by inmates or their families at booking.  If the prescription is verified, the medications shall be offered immediately on issuance of the order, so long as they are available in the jail's stock supply, or within 48 hours if they must be ordered.  Inmates who receive such "bridge medications" shall receive a face-to-face evaluation with a psychiatrist within seven days of initiation of the medication.

3.    For inmates on psychotropic medications, follow-up face-to-face evaluations with a psychiatrist (either in person or through telemedicine) shall occur as needed, but within 30 days following the initial visit. Subsequent face-to-face evaluations by the psychiatrist shall occur as needed, but at intervals of no more than 90 days.

**B.      Housing**

1.      The County shall house inmates with serious mental illness in one of the units designated for such housing.  Those units shall not place restrictions on inmate movement and programming solely due to their mental illness; custodial functions shall be consistent with the inmates' classification levels.

2.      The units designated for inmates with serious mental illness shall provide programming and structured activities appropriate for the acuity of the mental health needs and capabilities of the inmates as well as standard of care in the community.  Inmates in these units shall be provided with the maximum out-of-cell time possible, consistent with institutional safety and security.

3.      The County shall develop and implement policies and procedures to ensure clinical input prior to custodial transfers of mentally ill inmates.  In particular, the County shall not transfer inmates determined to be mentally ill to or from a mental health housing unit unless mental health clinical staff have been consulted to determine whether the transfer is therapeutically indicated and would not be detrimental to the mental health of the inmate. Unless the transfer is an emergency, the procedures shall ensure that clinicians will be consulted in adequate time to ensure that any conflicting recommendations may be resolved through (a) consultation between clinical staff and the facility commander or his/her designee for transfers between housing units in the same facility, or (b) a DMH supervisor along with the facility commander or his/her designee from the sending facility for transfers between facilities.

### C.      Treatment space

1.      The County shall provide adequate clinical space in every facility to support mental health clinical operations while also securing appropriate privacy for patients.

2.      Adequate clinical space includes the space needed reasonably to perform mental health treatment functions, including individual and group face-to-face encounters as well as access to health care records.  Adequate space for telemedicine purposes requires a confidential space with adequate lighting for the patient and on-site health care staff to reasonably sit and view the screen and any necessary records access.

### D.      Suicide prevention

1.      Within one month of the date the Consent Decree is issued by the Court, the County shall develop and implement policies and procedures to allow step-downs for inmates placed in safety cells because of potentially self-harming behavior.  The step-down program shall gradually add property and privileges and programming consistent with clinical assessment of a inmate's condition, with the intent to minimize the time spent in the safety cells under conditions of total deprivation of property and programming.  Consistent with NCCHC standards, seclusion for clinical reasons shall last no more than 12 hours.

2.      Within one month of the date the Consent Decree is issued by the Court, the County shall develop and implement policies and procedures to ensure that inmates who are awaiting transfer to RUMC due to their serious risk of self-harm are provided treatment and attention consistent with that determination pending transfer.  Such treatment shall be determined by mental health clinicians, but may include one-on-one observation.

18

3.      The County shall develop and implement policies and procedures to ensure continuous health care monitoring of inmates in restraints consistent with NCCHC standards.

4.      Safety cells and restraint chairs shall be cleaned and sanitized thoroughly on a regular basis.  Inmates in safety cells shall be offered meals three times a day and water at least every two hours.  They shall be provided with all prescribed medications.  These contacts shall be logged.  Custody supervisors will regularly inspect the cells and safety cell logs.  Custody and clinical staff shall question inmates in the safety cells to check the accuracy of the logs and the welfare of the inmates.  The results of these inspections shall be recorded and reviewed at least weekly by a lieutenant.

5.      Clinicians evaluating inmates in safety cells or restraint chairs or providing services shall speak to them face to face, and not through a closed door, except where the likelihood of violence by the inmate warrants.

6.      Within one month of the date the Consent Decree is issued by the Court, the County shall develop and implement policies and procedures to screen inmates returning from court after the imposition of life or extremely lengthy sentences or the death penalty to determine the need for enhanced supervision or mental health services.


**E.      Continuity of care**

1.      The County shall provide continuity of care from admission to transfer or discharge from the facility, including referral to community-based providers when determined by the medical provider.

2.      The County shall provide discharge planning for sentenced inmates with serious mental health disorders, connecting such inmates to community health care providers, community social services, community-based

19

housing, and/or appropriate services according to the inmate's need. The
same services will be provided to unsentenced inmates provided adequate
time is available prior to a legally mandated release.

3.      The County shall develop and implement a system that allows inmates who
are prescribed psychiatric medications to discharge from custody with a
supply of medications or have access to these medications as soon as
possible following their release from jail.

## IV.   Disability Accommodations

1.      Inmates with mobility impairments shall not be placed, solely due to their
disability or use of assistive devices, in locations with fewer privileges, less
programming, or more restrictions on movement, property, or activities
than they would experience if housed based on factors unrelated to their
disability or use of assistive devices.  This requirement shall not prevent the
County from placing in sheltered housing disabled inmates who are unable
to attend to their basic daily living needs (such as eating and personal
hygiene) without assistance.

2.      The County shall not deny disabled inmates reasonable accommodations
for their disabilities, such as special shoes or mattresses, due to custodial
restrictions, so long as the accommodations are recommended or approved
by the treating clinician.  If the medical/mental health care liaison
lieutenant determines that there are safety and security concerns regarding
the specific accommodation recommended for an individual inmate, he or
she shall consult with the Medical Director and Administrator of
Correctional Health Services to determine a resolution that provides the
inmate with a reasonable accommodation that does not compromise
institution safety and security.

20

3.      An inmate who arrives at the jail with an assistive device shall be allowed
        to retain the device, or shall be provided with a jail-issued equivalent
        device, so long as it does not constitute an immediate risk of bodily harm or
        threaten the security of the facility based on an individualized assessment,
        unless a jail physician documents that the device is not medically necessary
        or reasonable to allow equal access to jail programs, services, or activities.
        Inmates shall not be punished or restricted from specific accommodations
        based on the actions of other inmates.

4.      The County shall provide assistive devices prescribed by a jail physician to
        inmates as soon as reasonably practical, so long as the device does not
        constitute an immediate risk of bodily harm to inmates or staff, or threaten
        the security of the facility.

5.      The medical/mental health liaison lieutenant shall be responsible for
        determining if an assistive device constitutes an immediate risk of bodily
        harm or threatens the security of the facility.  If the health care lieutenant
        makes such a determination, custody staff shall consult with medical staff
        to determine an appropriate alternative accommodation that shall be
        provided.  Assistive devices shall not be confiscated if another inmate is the
        source of the security threat.

**V.      Policies and Procedures**

1.      The County's policies and procedures shall be revised, as necessary, to
        reflect all of the health care remedial measures described in the Remedial
        Plan, and the County shall deliver healthcare pursuant to these revised
        policies and procedures.  Unless otherwise indicated herein, the policies
        and procedures shall be revised by six months from the date the Consent

21

Decree is issued by the Court and implemented by nine months from the date the Consent Decree is issued by the Court.

2.     The Sheriff's Department shall develop and implement such new policies and procedures as are needed to comply with the provisions of this Remedial Plan, including but not limited to the implementation of proper policies, procedures, and corrective action plans to address problems uncovered during the course of quality assurance review activities.

3.     Upon Court approval of the Consent Decree, appropriate training shall be formulated and conducted with all staff regarding the requirements of the Consent Decree and Remedial Plan, as well as changes to policies and procedures.  Unless otherwise indicated herein, this training shall be completed by nine months from the date the Consent Decree is issued by the Court

4.     The County will provide a budget for correctional  health care services sufficient to finance adequate health care and custody staff to comply with this Remedial Plan.

# REMEDIAL PLAN
# EXHIBIT A:
# STAFFING

| Correctional Health Services | |
|---|---|
| Position | Total Staffing Levels |
| Correctional Healthcare Administrator | 1 |
| Chief of Medical Specialty | 1 |
| Chief of Dentistry | 1 |
| Assistant Administrator | 1 |
| Manager, QA and Infection Control | 1 |
| Supervising Institutional Nurse | 4 |
| Utilization Management - DCU/Hospitals | 1 |
| Administrative Services Analyst II | 2 |
| E.H.R. Analyst | 1 |
| QA Coordinator | 4 |
| Secretary II | 1 |
| Physician IV | 4 |
| Physician II | 3 |
| Pharmacist | 1 |
| Nurse Practitioner II | 2 |
| Nurse Practitioner III | 7 |
| Sr. Institutional Nurse | 9 |
| Institutional Nurse | 121 |
| Licensed Vocational Nurse-Detention | 53 |
| Telemedicine Nurse | 3 |
| Discharge Planner | 3 |
| Nursing Educator | 1 |
| Medical Records Supervisor | 1 |
| Sr. Medical Records Technician | 1 |
| Medical Records Technician II | 5 |
| Medical Records Technician I | 8 |
| Office Assistant III | 2 |
| Radiologist Technologist II | 2 |
| Dentist | 1 |
| Dental Assistant | 2 |
| Pharmacy Technician II | 5 |
| Housekeeper | 4 |
| | 256 |

| Robert Presley Detention Center | |
|---|---|
| Position | Total Staffing Levels |
| Physician II | 2 |
| NP III | 2 |
| Sr Inst Nurse | 2 |
| Inst Nurse | 32 |
| LVN-AD | 16 |
| MR Sup | 1 |
| Sr MR Tech | 1 |
| MR Tech II | 2 |
| OA III | 1 |
| MRT I | 4 |
| Rad Tech II | 1 |
| Dental Asst | 1 |
| Pharm Tech II | 2 |
| D/C Planner | 1 |
| Telemed RN | 1 |
| | **69** |

| Smith Correctional Facility | |
|---|---|
| Position | Total Staffing Levels |
| Physician IV | 2 |
| NP III | 3 |
| NP II | 1 |
| Sr Inst Nurse | 2 |
| Inst Nurse | 37 |
| LVN-AD | 18 |
| MR Tech II | 2 |
| OA III | 1 |
| MRT I | 2 |
| Pharm Tech II | 2 |
| Housekeeper | 1 |
| D/C Planner | 1 |
| Telemed RN | 1 |
| | **73** |

| Indio Jail | |
|---|---|
| Position | Total Staffing Levels |
| Physician IV | 0.8 |
| NP II | 0.8 |
| Sr Inst Nurse | 2 |
| Inst Nurse | 14 |
| LVN-AD | 4 |
| | **21.6** |

| Blythe Jail | |
|---|---|
| Position | Total Staffing Levels |
| Physician IV | 0.2 |
| NP II | 0.2 |
| Sr Inst Nurse | 1 |
| Inst Nurse | 8 |
| LVN-AD | 3 |
| Housekeeper | 1 |
| | **13.4** |

| Southwest Detention Center | |
|---|---|
| Position | Total Staffing Levels |
| Physician IV | 1 |
| Physician II | 1 |
| NP III | 2 |
| Sr Inst Nurse | 2 |
| Inst Nurse | 30 |
| LVN-AD | 12 |
| MR Tech II | 1 |
| MRT I | 2 |
| Rad Tech II | 1 |
| Dentist | 1 |
| Dental Asst | 1 |
| Pharm Tech II | 1 |
| Housekeeper | 1 |
| D/C Planner | 1 |
| Telemed RN | 1 |
| | **58** |

| Administration | |
|---|---|
| Position | Total Staffing Levels |
| CHS Admin | 1 |
| Chf of Med Spec | 1 |
| Chf of Dent | 1 |
| Asst Admin | 1 |
| Mgr, QA | 1 |
| Sup Inst Nurse | 4 |
| AA II | 2 |
| EHR Analyst | 1 |
| Comp/QA Coord | 4 |
| Secretary II | 1 |
| Pharmacist | 1 |
| Nurse Educator | 1 |
| Housekeeper | 1 |
| UM - DCU/Hosp | 1 |
| | **21** |



| Robert Presley Detention Center | |
|---|---|
| Position | Total Staffing Levels |
| Sr Medical Records Tech | 2.00 |
| Office Assistant II | 2.00 |
| Office Assistant III | 2.00 |
| MH Service Supervisor | 2.00 |
| Clinical Therapist II | 25.00 |
| Behavior Health Spec. III | 1.00 |
| Behavior Health Spec. II | 4.00 |
| Registered Nurse IV | 1.00 |
| Pyschiatrist III | 3.86 |
| | **42.86** |

| Smith Correctional Facility | |
|---|---|
| Position | Total Staffing Levels |
| Sr Medical Records Tech | 3.00 |
| Office Assistant II | 2.00 |
| Office Assistant III | 4.00 |
| MH Service Supervisor | 3.00 |
| Clinical Therapist II | 41.00 |
| Behavior Health Spec. III | 3.00 |
| Behavior Health Spec. II | 12.00 |
| Recreation Therapist | 5.00 |
| Pyschiatrist III | 5.64 |
| | **78.64** |

| Indio Jail | |
|---|---|
| Position | Total Staffing Levels |
| Office Assistant II | 1.00 |
| MH Service Supervisor | 1.00 |
| Clinical Therapist II | 6.00 |
| Behavior Health Spec. II | 2.00 |
| Pyschiatrist III | 0.35 |
| | **10.35** |

| Blythe Jail | |
|---|---|
| Position | Total Staffing Levels |
| Clinical Therapist II | 1.00 |
| | **1.00** |

| Southwest Detention Center | |
|---|---|
| Position | Total Staffing Levels |
| Office Assistant II | 3.00 |
| MH Service Supervisor | 1.00 |
| Clinical Therapist II | 8.00 |
| Behavior Health Spec. II | 2.00 |
| Pyschiatrist III | 3.11 |
| | **17.11** |

| Total Detention Staffing | |
|---|---|
| Sr Medical Records Tech | 5.00 |
| Office Assistant II | 8.00 |
| Office Assistant III | 6.00 |
| MH Service Supervisor | 7.00 |
| Clinical Therapist II | 81.00 |
| Behavior Health Spec. III | 4.00 |
| Behavior Health Spec. II | 20.00 |
| Registered Nurse IV | 1.00 |
| Recreation Therapist | 5.00 |
| Pyschiatrist III | 12.96 |
| | **149.96** |

# APPENDIX B

### *Gray et al. v. County of Riverside*
### EXPERTS' DUTIES

1.      Pursuant to Rule 706 of the Federal Rules of Evidence, the Court experts shall advise the Court on the County's compliance or non-compliance with the  Remedial Plan, dispute resolution matters addressed in paragraph (4), and testimony, if required, as addressed in paragraph (6), below.

2.      During the first year of the Consent Decree, the Court experts shall each complete two comprehensive reviews and reports, at least four months apart, to advise the Court on Defendant's progress in implementing the Remedial Plan.  For the remaining duration of the Consent Decree, the Court experts shall complete comprehensive reviews and reports as they determine to be necessary, or as requested by the parties, but not more than twice a year, to advise the parties and the Court on the adequacy of Defendant's implementation of the Remedial Plan.  To form the basis of their reports, the Court experts shall have reasonable access to all parts of any County jail facility, with adequate notice provided in advance to ensure appropriate security is provided, as well as all relevant budgetary, custody, and health care documents, persons (including confidential interviews with consenting staff and consenting prisoners), and institutional meetings, proceedings, and programs to the extent the experts reasonably determine such access is needed to fulfill their obligations.

3.      The parties shall be allowed ex parte contact with experts, but all expert findings and recommendations shall be set forth in writing in their reports.

4.     At the request of either party, the Court experts shall participate in the
dispute resolution process, as described in the Consent Decree, by evaluating the issue in
dispute and preparing a report, including but not limited to whether Defendant is in
substantial compliance with the relevant terms of the Remedial Plan.  The expert(s) shall
when possible provide a report regarding the area of disagreement within 45 days of the
request.

5.     The Court experts shall be available to meet jointly with the parties in
person or by telephone in a manner that is reasonable and convenient for the purpose of
resolving disputes between the parties.

6.     At the request of the Court, the Court experts shall attend any negotiations,
mediation sessions, or court hearings.

7.     The Court experts shall be entitled to reasonable compensation in an
amount approved by the Court, which shall be paid by Defendant, for time incurred to
prepare reports, resolve disputes, or attend hearings or meetings as requested by the
Court.  The Court experts will provide the parties with an annual budget outlining the
costs and fees to be charged for their expected services and will make every effort to
adhere to that budget. In the event that the amount of services provided by the Court
experts goes beyond the services projected in the budget, additional sums for reasonable
fees and expenses will be paid. The Court experts shall provide Defendant with a detailed
written itemization of the claimed fees and costs, itemized by date, amount of time spent,
and task, as well as records and bills evidencing the costs claimed, on a quarterly basis.