JAMES E. BROWN, Assistant County Counsel (SBN 162579)
KELLY A. MORAN, Deputy County Counsel (SBN 267147)
OFFICE OF COUNTY COUNSEL
3960 Orange Street, Suite 500
Riverside, CA 92501-3674
Telephone: (951) 955-6300
Facsimile: (951) 955-6363
Email: Jebbrown@rivco.org
       kmoran@rivco.org

ARTHUR K. CUNNINGHAM, SBN 97506
LEWIS BRISBOIS BISGAARD & SMITH LLP
650 East Hospitality Lane, Suite 600
San Bernardino, California 92408
(909) 387-1130 - Phone
(909) 387-1138 – Fax
Email: Arthur.Cunningham@lewisbrisbois.com

Attorneys for Defendant, COUNTY OF RIVERSIDE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTON GRAY, et al., on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE,<br>  Defendant. | CASE NO. EDCV13-0444 VAP (OP)<br><br>**CLASS ACTION**<br><br>**COUNTY OF RIVERSIDE'S OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE, OR IN THE ALTERNATIVE MODIFY, CONSENT DECREE (DOCKET NUMBER 177)**<br><br>*(Filed concurrently with: Declaration of James E. Brown; Declaration of Bonnie Carl; Declaration of Dr. Matthew Chang; Declaration of Thomas Hyland; and Declaration of Misha Graves)*<br><br>**JUDGE:** Hon. Virginia Phillips<br>**DATE:** TBD<br>**TIME:** TBD<br>**COURTROOM:** 8A<br>**LOCATION:** 350 W. First Street, Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

I. BACKGROUND AND FACTS .................................................. 4

II. LEGAL ARGUMENT................................................................ 8

    A. Plaintiffs have failed to Adhere to the Procedure Requirements Outlined in the Consent Decree and thus their Emergency Motion is Improper................................................................... 8

    B. Plaintiffs' Request for Modification of the Remedial Plan Is Improper ............................................................................. 10

    C. Plaintiffs' Requested Relief is Barred by the Prison Litigation Reform Act ............................................................ 12

    D. The Court Must Give Deference to the County and the County's Record of Responsiveness to the COVID-19 Pandemic ................................................................................ 14

III. CONCLUSION......................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Cf. Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir. 2018) .................................................... 11

*Coleman v. Brown*, 922 F. Supp. 2d 1004, 1048 (E.D. Cal./N.D. Cal. 2013) ..................... 11

*Gates v. Rowland*, 39 F.3d 1439, 1448 (9th Cir. 1994) ...................................................... 15

*Griffin v. Gomez*, 741 F.3d 10 (9th Cir. 2014) ................................................................... 15

*Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) ..................................................... 15

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) ............................................................ 15

*Procunier v. Martinez*, 416 U.S. 396, 405 (1974) ............................................................. 15

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992) ................................................. 11

*Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) ............................................................... 15

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ...................................................................... 15

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ..................................................................... 15

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ............................................................................................ 12, 14

**Other Authorities**

Prison Litigation Reform Act ................................................................................... 7, 12, 14

**Rules**

Rule 60(b)(5) ....................................................................................................................... 11

**TO THE PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

DEFENDANTS, COUNTY OF RIVERSIDE (hereinafter the "County") hereby offer the following Opposition to Plaintiffs' Emergency Motion to Enforce, or in the Alternative Modify, the Consent Decree (Docket No. 177).

## I.

## BACKGROUND AND FACTS

These are unprecedented times. To date, the worldwide pandemic of COVID-19 disease, also known as "novel coronavirus," has infected over 1.5 million individuals worldwide in over 180 countries and is implicated in over 94,000 worldwide deaths, including over 1,200 cases and 33 deaths in Riverside County. In response to this healthcare crisis, the County, and the elected officials and employees therein, have been working around the clock to determine how to best meet the needs of all residents. From the youngest to the oldest, the inmate to the un-incarcerated, and the unsheltered to those residing in mansions, the County is focused on protecting the health and safety of the more than 2.4 million people within its boundaries.

The County shares many of the concerns expressed in Plaintiffs' Emergency Motion to Enforce, or in the Alternative Modify, the Consent Decree (Motion) relating to the potential impact that COVID-19 could have upon the County's correctional system, including inmates and staff. It is for this reason that the County has taken the following extraordinary and unprecedented proactive measures (among many others described in greater detail herein and in the declarations filed in support of the County's Opposition)

designed to slow the spread of COVID-19 and to protect the health and well-being of those who live and work within the County's correctional facilities:

- All inmates are pre-screened prior to booking per the guidelines issued by the Centers for Disease Control and Prevention ("CDC").  Inmates are subsequently housed at the hospital, placed in quarantine, observation, or housed according to their classification, per medical staff.

- The movement of inmates who test positive and those who are symptomatic are tracked by staff to determine possible exposure and address accordingly.

- All inmate work crews receive temperature checks prior to working in the facility and around food.

- Unlimited soap is provided to all inmates free of charge.

- A CDC recommended cleaning solution is provided to inmates throughout the day and after every meal to sanitize inmate areas.

- Incoming and outgoing inmate mail rests in paper bags prior to handling and processing.

- Most meals are served in disposable mediums.

- Inmate movement is restricted to only when absolutely necessary both within a single facility and throughout the Corrections Division as a whole.

- All inmates and staff have been issued face coverings per the CDC guidelines, which are to be worn at all times.

- Inmate programs were modified to provide for educational and rehabilitative services absent staff contact to promote social distancing.

- Dayroom time is implemented in ¼ tier dayroom increments to limit the number of inmates in a common space and provide for social distancing.

- Inmates in dayrooms are regularly directed to adhere to social distancing requirements.

- Dayrooms and common areas are sanitized with CDC approved cleansers between use by inmates.

- Inmates receive education on personal hygiene, hand washing, social distancing, and prevention of the spread of the coronavirus via the inmate dedicated channel, which is broadcasted on televisions within each dayroom.

- No non-law enforcement individuals are permitted to come in contact with inmates.

- Because personal visiting was cancelled as a result of the COVID-19 virus, two free telephone calls per week have been provided by the Riverside County Sheriff's Department ("RSO") to each inmate.

- By utilizing established system-wide partnerships, the County has been able to offer technological-based alternatives to reduce transportation and to encourage adherence to social distancing guidelines, such as an increase the

number of video court appearances, telehealth appointments, and access to professional visits via electronic means.

In short, the County has already taken immediate, bold, and appropriate steps in response to this rapidly evolving crisis, and is constantly evaluating all processes to ensure that the health and welfare of all inmates and staff is protected. The record demonstrates that the County is working tirelessly to address the COVID-19 pandemic and its associated risks to inmates, staff, and the community at large. This record in no way establishes a pattern of deliberate indifference or a legal basis for the judicial intervention into and the micromanagement of the County's correctional system that has been requested by Plaintiffs.

Plaintiffs have not met the standards required for Court intervention. They have failed to utilize the required mediation process dictated by the controlling Consent Decree in this matter prior to coming before the Court. They have failed to adhere to the process required by the Consent Decree for a modification of the Remedial Plan. They have failed to meet the high standards for a prisoner release order as set forth in the Prison Litigation Reform Act ("PLRA"), and this Court therefore cannot grant the requested relief. And finally, they have failed to demonstrate that the County has been deliberately indifferent to the risk of harm posed by COVID-19. Indeed, the evidence is overwhelmingly to the contrary. For these reasons, Plaintiffs' Motion must be denied.

/ / /

/ / /

/ / /

## II.

## LEGAL ARGUMENT

**A. Plaintiffs Have Failed to Adhere to the Procedural Requirements Outlined in the Consent Decree and thus their Emergency Motion is Improper.**

On June 7, 2016, the Parties entered into a Consent Decree to "ensure the provision of constitutional health care and to ensure non-discrimination for inmates with disabilities in the Riverside County Jails" following the filing of a Class Action lawsuit by Plaintiffs on March 8, 2013. *See* Document No. 173, Paragraph 1, at 2:2-4. To the extent Plaintiffs' Emergency Motion falls within the scope of, and is based upon, alleged violations of the Consent Decree and Remedial Plan, the County contends that the Court should order the Parties to resolve these matters via the Dispute Resolution provisions laid out and agreed upon in the Consent Decree. *See* Document No. 173, Paragraphs 26-29, at 11:6-12:15. Namely:

1) "… the parties shall conduct good faith negotiations to resolve informally any matter in dispute, including but not limited to any contention that Defendant is not substantially complying as required by this Consent Decree or the Remedial Plan(s), or any contention that Defendant has demonstrated sufficient compliance with the Consent Decree and/or Remedial Plan(s) that the Consent Decree and monitoring thereunder should be modified or terminated…." *See* Document No. 173, Paragraph 26, at 11:8-15.

2) "If the parties are unable to resolve the dispute within 30 days of the original notice, either party may inform the relevant Court experts of the area of disagreement and request that the experts evaluate the issue and prepare a report. The experts must provide their report regarding the area of disagreement within 30 days of the request…" *See* Document No. 173, Paragraph 27, at 11:18-23.

3) "If within 30 calendar days of receipt of the Court experts' report, the parties are unable to reach a mutually satisfactory resolution of the dispute, either party may request mediation with Judge Raul Ramirez..." *See* Document No. 173, Paragraph 28, at 12:4-6.

4) "If mediation with Judge Ramirez does not resolve the dispute to the mutual satisfaction of the parties, either party may file a motion for relief to the Court of continuing jurisdiction." *See* Document No. 173, Paragraph 29, at 12:11-13.

This process was made part of the Consent Decree because that process, with these Parties and Mediator Ramirez, successfully resolved the entire dispute between the Parties in the past. Despite Plaintiffs' concession that the Consent Decree sets forth this dispute resolution process *(See* Document No. 177 at 17:22-27), Plaintiffs have attempted to bypass the same through the filing of their underlying motion prior to engaging in mediation efforts. The County requests that the Court deny Plaintiffs' motion until after the Parties have an opportunity to engage in mediation with Judge Raul Ramirez as required by Paragraph 28 of the Consent Decree. Only *after* mediation with Judge Ramirez has occurred and if a dispute between the parties remains, would Plaintiffs be permitted to move for relief from

this Court. As detailed in Section D below and through the Declarations filed in support of this Opposition, the County remains confident, however, that those issues raised by Plaintiffs are likely to be resolved in whole or in large part though good faith mediation. In anticipation of proper adherence to the process outlined in the Consent Decree, the County has contacted retired Judge Raul Ramirez, confirmed his availability, and has provided available dates (April 17th, 22nd, and 23rd) to Plaintiffs' counsel for consideration. Plaintiffs have declined to proceed with mediation prior to appearing before the Court. *See* Declaration of James E. Brown, Paragraphs 2-4 at 2:9-28, Exhibits "B" and "C".

Plaintiffs have failed to adhere to the procedural requirements set forth in the Consent Decree and thus their motion is premature. The County respectfully requests that the Court deny Plaintiffs' motion unless and until the Consent Decree's agreed-upon mediation process has been completed.

**B. Plaintiffs' Request for a Modification of the Remedial Plan is Improper.**

Plaintiffs have, once again, failed to adhere to the requirements of the Consent Decree. Plaintiffs are correct in their representation that "…Plaintiffs may seek to modify the Remedial Plan if the plan does not effectively accomplish those goals, or a modification is necessary to ensure Plaintiff class members receive adequate healthcare under the Eighth and Fourteenth…" *See* Document No. 177 at 25:11-15. However, Plaintiffs' request neglects to fully reference the requirements of Paragraph 11 of the Consent Decree which states, "Any party wishing to modify the plan must submit a proposed modification to the opposing party. The opposing party may request further information, request that the

modification(s) be reviewed by the Court's experts, and/or request that the proposed modification(s) be subjected to the dispute resolution process described below. If the parties fail to reach agreement on the proposed modification(s), the party proposing the modification(s) may seek relief from the Court." *See* Document No. 173, Paragraph 11 at 6:4-10.

The County has not been provided with a proposed modification of the Remedial Plan to review, or with the opportunity to engage in dispute resolution concerning the same. This failure to adhere to the procedural requirements set forth in the Consent Decree bars any modification to the Remedial Plan at this time. However, Plaintiffs gloss over the critical fact that a modification of the Remedial Plan is only permitted to the extent necessary to ensure that the remedial structure remains tailored to cure the alleged constitutional violations previously found by this Court. *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1048 (E.D. Cal./N.D. Cal. 2013) (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992). Similarly, Rule 60(b)(5) does not provide the Court with free-standing authority to remedy any alleged harm the County may inflict upon Plaintiffs, regardless of whether it is tethered to the previous findings of structural constitutional shortcomings in the delivery of medical and mental health care. *Cf. Parsons v. Ryan*, 912 F.3d 486, 501 (9th Cir. 2018) (explaining that a modification of relief was appropriate because it was **not** issued "in response to new violations of federal rights").

The impetus for the relief Plaintiffs seek by way of their emergency motion is entirely different from the allegations which served as the basis for their 2013 lawsuit. The specific

harm Plaintiffs allege is not caused by the alleged constitutional shortcomings in Defendants' ability to provide a system of "minimally adequate" medical and mental health services or alleged discrimination against certain inmates with disabilities. Any claimed constitutional violation in the County's current response to the COVID-19 crisis is different, in both nature and degree, from the alleged violations underlying the 2013 lawsuit. The Consent Decree and Remedial Plan from the 2013 lawsuit were never intended to prepare the County to confront an unprecedented pandemic. Nor could they have been, given that the entire world was unprepared for the crisis that has ensued as a result of the COVID-19 virus.

As Plaintiffs' Motion can only seek to address a different constitutional injury than those asserted in the underlying litigation, relief cannot be granted through a modification of the existing Remedial Plan. In the absence any argument that the County is out of compliance with the Consent Decree or Remedial Plan and seeking relief on an entirely novel basis, Plaintiffs' Motion can only be seen as an improper attempt to raise a new lawsuit, one filed without a Complaint, class certification, or adherence to any other proper procedure.

**C. Plaintiffs' Requested Relief is Barred by the Prison Litigation Reform Act.**

The Prison Litigation Reform Act ("PLRA") mandates that prospective relief must be narrowly drawn, extend no further than necessary, and be the least intrusive means of addressing the violation of the Federal right. 18 U.S.C. § 3626(a)(1)(A). Plaintiffs' vague suggestions - that the County move "detainees out of congregate living facilities", "direct

transfers of people from one correctional facility" to the not-yet-ready to be populated John J. Benoit Detention Center[1], "relocate vulnerable populations" to unidentified outside locations, and "…look[] at early releases and conduct them most days"- extend further than necessary and are not the least intrusive means of addressing the purported violation of Plaintiffs' rights.

Public health experts agree that the spread of COVID-19 is best addressed through physical distancing and heightened cleanliness, including thorough and frequent hand washing and regularly cleaning and disinfecting frequently touched surfaces. Plaintiffs' suggestions and recommendations are not the least intrusive means of accomplishing such goals. In fact, as detailed more fully below, the County has already put into place a comprehensive plan and practice of: increasing healthcare screening for COVID-19 symptoms; increasing the use of technological platforms to reduce the need for transportation outside of the facility; increasing access to cleaning supplies and personal hygiene items; and increasing the awareness of and ability to adhere to social distancing guidelines. Thus, less intrusive alternatives to achieve "ready access to hygiene materials and physical distancing" exist, and are already being implemented by the County.

---

[1] As further detailed in the Declaration of Chief Deputy Misha Graves, the John J. Benoit Detention Center is not currently available to house inmates. *See* Declaration of Misha Graves, Paragraph 3-6 at 2:15-3:3.

Notably, to the extent that Plaintiffs' request or suggest that the County engage in release of inmates to increase social distancing, the PLRA mandates that "no court shall enter a prisoner release order unless" orders for less intrusive relief have failed to remedy "the deprivation of the Federal right sought to be remedied through the prisoner release order," and the defendant has been given sufficient time to comply with the previous orders. 18 U.S.C. § 3626(a)(3)(A) (emphasis added). Here, Plaintiffs seek to remedy the alleged "unnecessary and disproportionate risk of contracting COVID-19" because "physical distancing -- is impossible in many of the crowded dormitories in the County's jails" *See* Document No. 177 at 19:19 – 20:3.  Yet, no prior order in the underlying case has required the County to take affirmative steps to mitigate inmates' risk of contracting COVID-19. Because Plaintiffs fail to meet this important statutory requirement, any such claim for relief must fail.

**D. The Court Must Give Deference to the County and the County's Record of Responsiveness to the COVID-19 Pandemic.**

The separation of powers is one of the core principles upon which our federal and state governments are built. This constitutional construct mandates that the three branches of government–executive, legislative, and judicial–remain separate and not otherwise infringe upon the authority of one another. As it relates to the prison system, the Supreme Court has aptly observed that "'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform,'" recognizing that "running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of

resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) [overruled on other grounds in *Thornburgh v. Abbott*, 490 U.S. 401 (1989)]) (emphasis added). Critically, the Supreme Court has held that "[p]rison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez*, additional reason to accord deference to the appropriate prison authorities." *Turner*, 482 U.S. at 85.

The separation of powers and deference concepts have been relied upon in a wide range of matters involving prison administration and reform. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (examining extent of inmates' free exercise of religion and deference given to prison officials); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988) (upholding prison's policies concerning strip searches and use of tasers); *Gates v. Rowland*, 39 F.3d 1439, 1448 (9th Cir. 1994) (prison policy preventing HIV-positive inmates from holding food service jobs was properly within prison authorities' discretion); *Griffin v. Gomez*, 741 F.3d 10 (9th Cir. 2014) (holding district court improperly impeded state prison management by ordering release of inmate from administrative segregation unit during standard evaluation of his gang status); see also, *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995) (observing that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment [in a prison]"). Where, as in this

situation, the County has been actively responding to a global pandemic with no precedent, these foundational principles must not be set aside.

As a whole, the County has issued some of the most aggressive and swift protective measures in the State in an attempt to control the spread of COVID-19. On March 8, 2020 the County's Public Health Officer, Dr. Cameron Kaiser, issued a Declaration of Local Health Emergency based on an imminent and proximate threat to public health from the introduction of novel COVID-19 in Riverside County.  On March 10, 2020 the Board of Supervisors of the County of Riverside issued a Resolution proclaiming the existence of a Local Emergency in the County of Riverside regarding COVID-19 and a Resolution ratifying and extending the Declaration of Local Health Emergency due to COVID-19.  Also on March 10, 2020, Dr. Kaiser issued an Order cancelling the Coachella Valley Music and Arts Festival and Stagecoach Music Festival.  On March 12, 2020, Dr. Kaiser issued an Order cancelling all events with an anticipated attendance in excess of 250 persons.  On March 13, 2020, Dr. Kaiser issued an Order closing all schools (extended through June 19, 2020 by subsequent Orders of the Health Officer).  On March 16, 2020 Dr. Kaiser issued an Order prohibiting all gatherings with expected presence above ten (10) individuals. On March 27, 2020, Dr. Kaiser issued an Order restricting short-term lodgings within the County of Riverside. On April 2, 2020, the Health Officer and the County Executive Officer as the Director of Emergency Services issued an Order closing all golf courses and ancillary use areas. On April 4, 2020, the Health Officer and the County Executive Officer as the Director of Emergency Services issued an Order prohibiting all public gatherings and

requiring the use of face coverings by all persons.  *See* Declaration of James E. Brown, Paragraph 4, at 4:1 – 5:23, Exhibits D through L.

The steps taken by the County as pertaining to the protection of the inmate population have been no less aggressive.  The Department of Behavioral Health, Correctional Health, and the Riverside County Sheriff's Department have worked in cooperation with one another to put into place a system-wide COVID-19 Pandemic Response Plan ("Response Plan"), a true and correct copy of which is attached as Exhibit "A" to the Declaration of Bonnie Carl and included by reference in the Declarations of Dr. Matthew Chang and Lt. Thomas Hyland.  Some of the key alterations that have been made in order to combat the COVID-19 virus while ensuring that the needs of all inmates are met include:

- Telework opportunities have been provided to all non-essential staff and staff screening is being put into place.

- All inmates are pre-screened prior to booking per the guidelines issued by the CDC.  Inmates are subsequently housed at the hospital, placed in quarantine, observation, or housed according to their classification, per medical staff.

- The movement of inmates who test positive and those who are symptomatic are tracked by staff to determine possible exposure and address accordingly.

- All inmate work crews receive temperature checks prior to working in the facility and around food.

- Unlimited soap is provided to all inmates free of charge.

- A CDC recommended cleaning solution is provided to inmates throughout the day and after every meal to sanitize inmate areas.

- Incoming and outgoing inmate mail rests in paper bags prior to handling and processing.

- Most meals are served in disposable mediums.

- Inmate movement is restricted to only when absolutely necessary both within a single facility and throughout the Corrections Division as a whole.

- All inmates and staff have been issued face coverings per the CDC guidelines, which are to be worn at all times.

- Inmate programs were modified to provide for educational and rehabilitative services absent staff contact to promote social distancing.

- Dayroom time is implemented in ¼ tier dayroom increments to limit the number of inmates in a common space and provide for social distancing.

- Inmates in dayrooms are regularly directed to adhere to social distancing requirements.

- Dayrooms and common areas are sanitized with CDC approved cleansers between use by inmates.

- Inmates receive education on personal hygiene, hand washing, social distancing, and prevention of the spread of the coronavirus via the inmate dedicated channel, which is broadcasted on televisions within each dayroom.

- No non-law enforcement individuals are permitted to come in contact with inmates.

- Because personal visiting was cancelled as a result of the COVID-19 virus, two free telephone calls per week have been provided by the RSO to each inmate.

- By utilizing established system-wide partnerships, the County has been able to offer technological-based alternatives to reduce transportation and to encourage adherence to social distancing guidelines, such as an increase the number of video court appearances, telehealth appointments, and access to professional visits via electronic means.

The County has already taken significant and meaningful steps to mitigate the deadly potential of COVID-19 both within the jails and throughout the County as a whole. It is evident that this crisis is being taken extremely seriously by the County's elected officials and employees. Thus, the County respectfully urges that it be given the opportunity to continue to address these important issues without federal judicial intervention.

## III.

## CONCLUSION

The County shares Plaintiffs' concerns relative to the COVID-19 pandemic and the risk it poses to the inmates and staff who live and work within the County's correctional system. Because of this, the County, by and through well-established system-wide partnerships, has taken and continues to take aggressive and unprecedented steps to confront

this crisis. The County has taken meaningful steps to increase ready access to hygiene materials and to promote physical distancing. Through these measures—and others which have already been implemented or may be implemented in the coming days as the need arises and in response to the constantly evolving threat presented by COVID-19—the County is "reasonably" acting to ensure the safety and security of all who live and work within the correctional facilities.

Just as Plaintiffs have failed to adhere to the procedural requirements of the Consent Decree; failed to adequately relate their emergency motion to the underlying lawsuit; and failed to make a showing of deliberate indifference on the part of the County in the handling of the COVID-19 crisis, so too must their request for relief before this Court fail. Accordingly, the County respectfully submits that the Court must deny Plaintiffs' Emergency Motion to Enforce, or in the Alternative to Modify, the Consent Decree in its entirety.

Dated: April 10, 2020          By: /s/ *James E. Brown*
                                   JAMES E. BROWN
                                   Assistant County Counsel
                                   Attorneys for Defendant,
                                   COUNTY OF RIVERSIDE