KELLY A. MORAN, Chief Deputy County Counsel (SBN 267147)
OFFICE OF COUNTY COUNSEL
3960 Orange Street, Suite 500
Riverside, CA  92501-3674
Telephone:  (951) 955-6300
Facsimile:   (951) 955-6363
Email: kmoran@rivco.org

Attorneys for Defendant COUNTY OF RIVERSIDE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTON GRAY, et al., on behalf of themselves and all others similarly situated,<br><br>　　Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE,<br>Defendant. | CASE NO. EDCV13-0444 VAP (OP)<br><br>**CLASS ACTION**<br><br>**JOINT STATUS UPDATE AND STIPULATION TO TERMINATE THE COVID-19 PLAN**<br><br>**JUDGE:** Hon. Virginia Phillips<br>**DATE:** TBD<br>**TIME:**  TBD<br>**COURTROOM:** 8A<br>**LOCATION:** 350 W. First Street, Los Angeles, CA 90012 |

**TO THE HONORABLE COURT:**

Counsel for PLAINTIFFS, QUINTON GRAY, et al., on behalf of themselves and all others similarly situated, and counsel for DEFENDANT, COUNTY OF RIVERSIDE hereby offer the following Status Update and Joint Stipulation to Terminate the COVID-19 Plan:

1.　　As the Court is aware, on April 6, 2020, Plaintiff Quinton Gray ("Plaintiff") filed a document captioned "Emergency Motion to Enforce Consent Decree." ("Motion," Dkt. 177.)  On April 16, 2020, this Court granted Plaintiffs' Emergency Motion to Enforce the Consent Decree and ordered Defendant to develop and implement a plan to minimize the spread of COVID-19 in the Riverside County jails. (Dkt. 193.)

2.     On July 20, 2020, a Joint Stipulation and Proposed Order was filed with the Court in order to implement the Riverside Jails COVID-19 Response Plan (hereinafter the "COVID-19 Plan") negotiated by and between the parties.  (Dkt. 201.)  On July 23, 2020, the Court ordered that the COVID-19 Plan shall be implemented.  (Dkt. No. 202.)

3.     On October 14, 2020, the parties filed a "Stipulation for Order to Revise the COVID-19 Plan". (Dkt. 203.)  An Order approving the stipulated revision was signed by the Court the same day.  (Dkt. 204.)

4.     On June 22, 2022, the parties again filed a "Joint Stipulation to Revise the COVID-19 Plan".  (Dkt. 211.)  An Order approving the stipulated revision was signed by the Court on June 24, 2022.  (Dkt. 204.)  At such time, the COVID-19 Plan was limited to only ten (10) provisions, largely addressing issues related to masking, testing, and vaccination.

5.     Since June 24, 2022, the parties have routinely provided the Court with status updates and requests for additional time to address remaining provisions of the COVID-19 Plan.  At this time, the parties jointly agree that all such provisions have now been addressed.

6.     In an effort to control the spread of disease within its custody facilities, Defendant has revised, adopted, and implemented policies specifically related to the prevention and control of infectious diseases, including COVID-19.  A true and correct copy of Riverside County Correctional Healthcare Services Policy J-118, titled "Infectious Disease Prevention and Control", is attached hereto as Exhibit "A".  Similarly, a true and correct copy of Riverside County Sheriff's Department Correction Division Policy 508.02, titled "Communicable Diseases", is attached hereto as Exhibit "B".

7.     Likewise, in the interest of ensuring the health and safety of those both living and working in its correctional facilities, Defendant has updated policies to reflect actions already being taken by the Riverside County Sheriff's Department, including providing soap at no cost to incarcerated persons and offering daily access to cleaning supplies.  True and correct copies of the recently updated Riverside County Sheriff's Department Correction

Division Policy 501.04 and Policy 507.03 are attached hereto as Exhibits "C" and "D" respectively.

8.      To date, COVID-19 restrictions have been lifted statewide.  On September 13, 2022, the State Public Health Officer issued an Order rescinding the prior Order of July 26, 2021.  In part, the July 26, 2021 Order, now rescinded, required masking and testing in state and local correctional facilities and detention centers.

9.      Additionally, California's COVID-19 State of Emergency was terminated on February 28, 2023.  Per the Office of Governor Newsom, "With hospitalizations and deaths dramatically reduced due to the state's vaccination and public health efforts, California has the tools needed to continue fighting COVID-19 when the State of Emergency terminates at the end of February, including vaccines and boosters, testing, treatments and other mitigation measures like masking and indoor ventilation."[1]

10.     Given the change in the law, the actions taken by Defendant over the course of the past nearly three years, the continued collaboration of the parties, and pursuant to Section 9 of the Court-ordered COVID-19 Plan, the parties now jointly request that the Court issue an Order terminating the COVID-19 Plan in its entirety.

11.     Defendant will continue to offer and make available COVID-19 testing, vaccines, boosters, masks, and therapeutic treatment (when appropriate) to all persons housed within the Riverside County jail system. Defendant is currently, and has been for a significant time, offering vaccines and boosters to all persons who are housed or are to be housed.  With the assistance of Plaintiffs' counsel, Defendant has made ongoing efforts to educate those in custody about the vaccine so that informed decisions can be made by all. Persons in custody are being educated about and offered the option to accept the vaccine upon intake for housing into a Riverside County correctional facility and are routinely offered access to the same throughout their stay in Defendants' custody.

---

[1] https://www.gov.ca.gov/2022/10/17/governor-newsom-to-end-the-covid-19-state-of-emergency/#:~:text=SACRAMENTO%20%E2%80%93%20Today%2C%20Governor%20Gavin%20Newsom,used%20to%20combat%20COVID%2D19.

**JOINT STATUS UPDATE AND STIPULATION TO TERMINATE THE COVID-19 PLAN**

12.     As of the time of this filing, Defendant has a positivity rate of less-than 2% of the total population in custody.  Over the past three (3) months, Defendant's COVID-19 positivity rate for those in custody has remained significantly below two percent.  Defendant has not had one person admitted to the hospital due to COVID-19 in well over 12 months.

13.     The parties have negotiated in good faith and agree that this relief meets the requirements of 18 U.S.C. § 3626: the relief is narrowly drawn, extends no further than necessary to ensure the protection of the federal constitutional and statutory rights of Plaintiffs, and is the least intrusive means necessary to accomplish those objectives.

14.     The parties remain actively engaged in discussions related to the medical and mental health care of incarcerated persons pursuant to the Remedial Plan and Consent Decree in effect in this matter.  As such, the parties are confident that the specific restrictions of the COVID-19 Plan are no longer necessary to ensure the health and safety of those in custody and jointly request that plan be terminated at this time.

**IT IS SO AGREED AND STIPULATED**

PRISON LAW OFFICE

Dated:  April 7, 2023                    By: /s/ *Sara Norman*
                                                      SARA NORMAN
                                                      THE PRISON LAW OFFICE
                                                      Attorneys for Plaintiffs,
                                                      QUINTON GRAY et al.

OFFICE OF COUNTY COUNSEL

                                                  /s/  *Kelly Moran*
Dated: April 7, 2023                     By: _____
                                                      KELLY A. MORAN
                                                      Attorneys for Defendant,
                                                      COUNTY OF RIVERSIDE

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, KELLY A. MORAN, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *Kelly A. Moran*

## PROOF OF SERVICE

### United States District Court Case No. 5:13-cv-00444-VAP-OP

I, the undersigned, say that I am a citizen of the United States and am employed in the county of Riverside, over the age of 18 years and not a party to the within action or proceeding; that my business address is:  3960 Orange Street, Suite 500, Riverside, CA 92501-3611.

On ___April 7, 2023___, a true and correct copy of the foregoing document entitled:

### JOINT STATUS UPDATE AND STIPULATION TO TERMINATE THE COVID-19 PLAN

was served on all parties pursuant to FRCivP 5(b) as follows:

| | |
|---|---|
| Donald Specter<br>Sara Linda Norman<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710<br>510-280-2621<br>Fax: 510-280-2704<br>Email: dspecter@prisonlaw.com<br>snorman@prisonlaw.com | Arthur Kenneth Cunningham<br>Jackson Lewis P.C.<br>200 Spectrum Center Drive, Suite 500<br>Irvine, CA 92618-5005<br>Telephone: (949) 885-5260<br>Email:<br>Arthur.Cunningham@JacksonLewis.com |
| Shawn Everett Hanson<br>Akin Gump Strauss Hauer and Feld LLP<br>580 California Street 15th Floor<br>San Francisco, CA 94104-1036<br>415-765-9500<br>Fax: 415-765-9501<br>Email: shanson@akingump.com | Christopher D Lockwood<br>Arias and Lockwood<br>1881 South Business Center Drive Suite 9A<br>San Bernardino, CA 92408<br>909-890-0125  Fax: 909-890-0185<br>Email:<br>christopher.Lockwood@ariaslockwood.com |
| Danielle C Ginty<br>Akin Gump Strauss Hauer & Feld LLP<br>580 California Street Suite 1500<br>San Francisco, CA 94104<br>415-765-9500<br>Fax: 415-765-9501<br>Email: dginty@akingump.com | Stephanie Joy M Tanada<br>Jackson Lewis P.C.<br>200 Spectrum Center Drive, Suite 500<br>Irvine, CA 92618-5005<br>Telephone: (949) 885-5260<br>Email: Stephanie.Tanada@Jacksonlewis.com |

☒ TO BE SERVED BY THE COURT VIA THE NOTICE OF ELECTRONIC FILING (NEF).       Pursuant to L.R. 5-3.2.3, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the addresses stated.

1

2        I declare under penalty of perjury under the laws of the United States of America, State of California that the foregoing is true and correct.

3        Executed on ___April 7, 2023___, at Riverside, California.

4

5                       /s/*Bianca Ruiz*

6                          BIANCA RUIZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT STATUS UPDATE AND STIPULATION TO TERMINATE THE COVID-19 PLAN**

# EXHIBIT A

| Riverside County Correctional Healthcare Services Policy and Procedures | Effective 1/1/2022-12/31/2022 |
|---|---|
| **Title: Infectious Disease Prevention and Control** | **NUMBER: J-118** |
| **REFERENCE: Title XV, Article 11, Section 1206.5; NCCHC J-B-02** | |

**POLICY**

The Correctional Healthcare Services (CHS) Medical Director and Healthcare Services Administrator shall coordinate with the California and Riverside County Public Health Department to maintain and update a comprehensive institutional program that includes identification, surveillance, prevention, and control of communicable disease including workflows as clinically indicated.

**PROCEDURE**

A.   The *Receiving Screening* form shall be completed by a Registered Nurses during the Intake/Booking process including screening questions and identifying patient history of communicable diseases.

B.   Patients with suspected or confirmed communicable diseases requiring respiratory isolation shall be housed in a negative pressure isolation cell at the jail facility (when available) or transferred to Riverside University Health System Medical Center for isolation and treatment as clinically indicated.

C.   CHS shall notify the Public Health Department of applicable communicable diseases as listed in the *Disease Reporting Requirements* utilizing established forms and methods for communication.

D.   Diagnostic testing for communicable diseases shall be ordered by a Provider based on clinical presentation, patient request, standing orders, or established procedures such as Covid-19 testing.

E.   Patients identified with a negative communicable disease result based on diagnostic testing are reviewed by a Provider or designee and may be notified by CHS nursing staff.

F.   Patients identified with a positive communicable disease result based on diagnostic testing including HIV, Tb, Hepatitis, etc. are reviewed by a Provider and shall be scheduled for Provider clinic for patient notification, education, and to establish an individualized patient treatment plan.

G.   Patients identified with a positive Covid-19 test shall be reviewed by CHS nursing staff with patient notification and follow-up based on the current established Covid-19 workflow.

H.   CHS staff shall ensure that medical, dental and laboratory equipment and instruments are appropriately cleaned, decontaminated, and sterilized per applicable recommendations and/or regulations.

I.   CHS staff shall ensure that sharps and biohazardous wastes are disposed of properly.

J.   Universal precautions and appropriate PPEs are always utilized by CHS staff to minimize the risk of exposure to communicable diseases.

K.   Covid-19 Workflow updated as attached.

**Applicable Facilities: Blythe Jail, CBDC,JBDC, RPDC and SCF**

**Riverside County Adult Corrections**
**Correctional Healthcare Services Workflow for COVID-19**

| COVID-19 Education | Covid Screening Process |
|---|---|
| People with COVID-19 have had a wide range of symptoms reported – ranging from mild symptoms to severe illness. Symptoms may appear 2-14 days after exposure to the virus. People with these symptoms may have COVID-19: | • All patients during Health Assessment/Intake Process will be Rapid Tested. |

People with COVID-19 have had a wide range of symptoms reported – ranging from mild symptoms to severe illness. Symptoms may appear 2-14 days after exposure to the virus. People with these symptoms may have COVID-19:

- **Fever of > 100.4**
- Chills
- Cough
- Shortness of breath or difficulty breathing
- Fatigue
- Muscle or body aches
- Headache
- New loss of taste or smell
- Sore throat
- Congestion or runny nose
- Nausea or vomiting
- Diarrhea

*Identify recent use of Tylenol, Aspirin or Motrin that may mask fever.

Emergent signs or symptoms of COVID-19 require transfer to ER as clinically indicated:
- Difficulty breathing with respiratory distress or decreased oxygen saturation
- Persistent chest pain or pressure
- New onset Altered Level of Consciousness
- Bluish lips or face

**General Information:**
- Use appropriate PPE for all patient encounters.
- Place surgical mask on patient.
- For questions regarding the workflow contact on-site/on-call supervision. For orders, please contact a provider.
1. Educate patient on completing HCR for worsening symptoms and the importance of wearing a mask and handwashing.
2. Initial/Booster Covid and Flu vaccines are available to all patients. Educate patient to request vaccine utilizing the healthcare request form.

**Covid Screening Process**

- All patients during Health Assessment/Intake Process will be Rapid Tested.
- All patients will be offered a mask at the time of screening.
- All patients will be offered education on Covid vaccines/booster and flu vaccines.
- All symptomatic patients at NSC will be Rapid Tested.
- Notify custody of any positive Rapid Test results.
- If positive, refer to positive patient workflow below.
- If <u>negative and symptomatic</u>, consider common cold and or additional nursing protocols as clinically indicated
- Do not complete a PCR test on a patient that is symptomatic and tests positive on a Rapid Test.
- If patient is asymptomatic and test negative on a Rapid Test no future testing or action is required.
- Notify provider on-site or on-call for further orders as clinically indicated.
- Complete Intake process.

Positive identified patients during intake or after housing:

1. Notify custody of positive status for re-housing
2. Sending facility MUST complete the following items prior to sending patient to SCF:
   a. **An assessment in TC with current symptoms and vitals**
   b. **Add a Covid Flag**
   c. **Send ALL medications with patient**
   d. **Add a NSC for day 2, day 5, and day 10.**
   e. **Provide patient with 2 packets of OTC Cold Relief medication if symptomatic.**

Revised February 2023

**Riverside County Adult Corrections**
**Correctional Healthcare Services Workflow for COVID-19**

| | |
|---|---|
| Once patient has been transferred to quarantine housing:<br><br>**Documentation:** Nursing note must include, but not limited to: Covid education, positive test results, current symptoms, how to access medical services, and medications issued to the patient.<br><br>(*Do Not Enter OTC Cold Relief in the EMAR*) | 1. **Complete NSC with a progress note and vitals (Pulse Ox, HR, and Temp) on day 2, day 5, and day 10**.<br>2. **Patients with moderate symptoms or vulnerable population** (*ie. Worsening symptoms or non-improvement of symptoms, new onset of fever, SOB, or respiratory symptoms*), **will be monitored daily.**<br>3. **On day 2 or after, provide 6 packets of OTC Cold Relief medication if clinically indicated**. |

| Quarantine Discontinuation Process | |
|---|---|
| Asymptomatic Patient with COVID-19 positive result | • At least 10 days have passed since test date **and**<br>• Remain asymptomatic |
| Symptomatic Patient with COVID-19 positive result<br><br>• Note:<br>If not recovered after 10 days, please consult the facility medical provider for review/orders as clinically indicated | • At least 10 days since symptoms first appeared and now asymptomatic or significant improvement in symptoms **and**<br>• At least 24 hours have passed since last fever without the use of fever reducing medications |

| Public Health Contact: | Days: (951) 358-5107 | Nights: (951) 782-2974 |
|---|---|---|
| LabCorp Contact | 24/7: 800-244-9698 (must provide 8-digit account number) | |
| Account Numbers: SCF 04120630; Blythe 04120610; CBDC 04120620; RPDC 04120640 | | |

**Patient Intake Booking Process:**

1. RN shall complete the booking process including Receiving Screening and Health Assessment.
2. RN shall complete a POC COVID-19 rapid test and document results in "Health Assessment" comments and "BD Rapid Test" in the "Medical" drop down for every patient.
3. If an asymptomatic patient refuses, document education provided and reoffer testing scheduling "NSC" the following day. If patient continues to be asymptomatic, and informed refusal despite education, shall be allowed to be housed.
4. If a symptomatic patient refuse testing despite education, patient shall be isolated and monitored via NSC and continue to offer testing. Nursing staff to consult with provider as medically indicated.

**Patient Housing and Results:**

1. Positive Test Results: RN shall inform patient and make arrangements for patient transfer to SCF for housing and follow up care. If patient is a Cite Release, RN shall provide patient education per current CDC/Riverside Department of Public Health guidelines.
2. Negative Test Results: RN shall inform patient and allow RSO housing per Classification.

**PPE Recommendations for Medical Staff:**

1. All staff must wear a facial covering while having contact with patients within a correctional facility.
2. Symptomatic Patient Testing (Intake/Housing Unit): mask, gown, face shield, and gloves may be worn.
3. Asymptomatic Patient Testing: mask and gloves shall be worn.

Revised February 2023

**Riverside County Adult Corrections**
**Correctional Healthcare Services Workflow for COVID-19**

# EXHIBIT B

**RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**
**CORRECTION DIVISION POLICY MANUAL**

| TITLE:     Communicable Diseases | NUMBER: 508.02 |
|---|---|

**POLICY:**     The Riverside County Sheriff's Department will coordinate with Correctional Healthcare Services to maintain and update a comprehensive institutional program that includes identification, surveillance, prevention, and control of communicable diseases.

Each facility will develop and follow a procedure for notifying the Department of Public Health for known cases of incarcerated persons with a communicable disease or suspected of having a communicable disease, as well as a method for reporting communicable disease to the Department of Public Health.

**REFERENCE:**     CAC title 15, sections 1051 and 1206.5., CDC MMWR 43 (RR-13); 10/28/94, National T.B. Center, CFR 1910.1035, Vol. 62, No. 201, 10/17/97, page 54284, Title 17 § 2500,2593,2641.5-2643.20, 2800-2812, Penal Code §7500,7501,7552, Department Policy 508.08 and 508.11

**GUIDELINES**

1.0     Communicable Disease Types

1.1     Communicable diseases encountered within corrections may include, but are not limited to, tuberculosis, hepatitis, sexually transmitted diseases, AIDS, meningitis, influenza, Methicillin-resistant Staphylococcus aureus (MRSA), measles, and chickenpox. For a list of reportable communicable diseases refer to P508.02 Attachment #1 (Disease Reporting Requirements).

2.0     Reporting Measures

2.1     Custody staff will notify medical staff and a supervisor of newly booked persons who claim to have a communicable disease or display signs or symptoms of a communicable disease.

2.2     Custody staff will immediately isolate incarcerated persons who have or are suspected to have a communicable disease.

3.0     Accidental Transfer/Exposure

3.1     If an incarcerated person is inadvertently housed or transferred with a suspected contagious disease medical staff, the facility commander and director of medical services will be notified immediately.

3.2     Custody staff will immediately isolate the incarcerated person suspected of having a contagious disease.

3.3     At the request of medical staff, Custody staff will provide a list of all incarcerated

| TITLE: | **Communicable Diseases** | **NUMBER: 508.02** |
|---|---|---|

persons who have been exposed by being housed or transported with a person identified as infected with a contagious disease.

3.4      An incident response plan will be developed and implemented in consultation with the Chief Medical Director physician.

3.5      The facility commander will verify the incident is reported to the Riverside County Public Health Officer, as required by law.

3.6      Custody staff will cooperate with the medical staff while incarcerated persons receive appropriate testing and treatment if they are suspected of having a communicable disease.

4.0      Handling of Incarcerated Persons with Airborne Disease

4.1      Those who have or are suspected of having tuberculosis or other airborne communicable diseases will be isolated in a negative pressure cell. Incarcerated persons with non-airborne communicable diseases may be isolated in a non-negative pressure cell.

     4.1.1    All incarcerated persons housed in a negative pressure cell for medical purposes will have the reason for their placement kept as confidential as possible. Under no circumstances will another incarcerated person be told of an incarcerated person's medical condition.

5.0      Court Appearances for Medically Isolated Incarcerated Persons

5.1      The Transportation Coordinator will contact the court department where the incarcerated person is scheduled to appear and inform them of their name and booking number and that they are not medically cleared to appear in court.

5.2      The judge, in any of these instances, may also decide to come to the housing location or other designated area in the jail to conduct any necessary legal proceedings with the incarcerated person.  If this occurs, the Transportation Coordinator will contact the Medical Liaison Sergeant to facilitate between the judge and floor operations staff to verify that the judge and other court personnel are accommodated.

6.0      Negative Pressure Cells for Incarcerated Persons with Airborne Disease

6.1      Refer to Department Policy 508.08 (Exposure Control Plan).

6.2      An airborne isolation sign will be placed on the cell door instructing anyone requiring entry to use an N-95 respirator mask.

6.3      When the negative pressure cells are used for medical purposes, an entry/exit log will be placed outside of the cell indicating which incarcerated person is in the cell.

| TITLE: | Communicable Diseases | NUMBER: 508.02 |
|---|---|---|

7.0   Testing Negative Pressure Cells

   7.1   All negative pressure cells, when being used for medical purposes, will be tested prior to use, and daily thereafter to confirm that negative pressure is present. When the negative pressure cell is not being used for medical purposes, it will be tested monthly. Corrections personnel will perform this test and all tests will be documented (See P508.02 Attachment #2). The test documentation will include:

      7.1.1   Date and time of test
      7.1.2   Location
      7.1.3   Parameter measured (Negative pressure)
      7.1.4   Positive or negative results
      7.1.5   Signature of person performing the test
      7.1.6   This record will be maintained for the current year plus five (5) years

   7.2   Negative pressure cells equipped with a pressure monitor may rely on the reading of the monitor to confirm negative pressure

      7.2.1   Negative pressure cells not equipped with a pressure monitor should use the "Smoke tube test" or the "Tissue paper test" to assure negative pressure. The smoke tube test is performed by:

         ➢ Releasing smoke slowly, parallel to, and two inches in front of the gap at the bottom of the closed door.
         ➢ If smoke moves into the cell, the cell is under negative pressure.
         ➢ If smoke moves away from the door or remains stationary, the cell is not under negative pressure.

   7.3   The tissue paper test is performed by:

      7.3.1   Holding a thin strip of tissue paper along the bottom of the closed cell door or dropping a small piece of tissue paper along the bottom of the closed cell door.
      7.3.2   The tissue paper should be drawn under the door towards the cell.
      7.3.3   If the tissue paper is blown away from the door or falls straight to the floor, the cell is not under negative pressure.

   7.4   These tests should be conducted at least three times to confirm the results.

      7.4.1   If there is an unsatisfactory result, it will be immediately reported to Building Services.

8.0   Cleaning Negative Pressure Cells

   8.1   After each medical use, the cell should be left empty with the airflow mechanism operating for at least two hours before entering. A note should be placed on the outside of the door indicating when the cell is clear to enter.

| TITLE: | **Communicable Diseases** | **NUMBER: 508.02** |
|---|---|---|

> 8.1.1  No special precautions are needed for handling the incarcerated person's dishes, books, laundry, bedding, or other personal items.

9.0   Maintenance for Negative Pressure Cells

9.1   All negative pressure cells will be maintained, inspected and performance monitored every six months. The ventilation rates will be measured using a calibrated balometer, or other airflow measuring device, at least every six-months. The measurement is to certify each negative airflow cell has a minimum of twelve (12) air exchanges per hour. Public Health Office of Industrial Hygiene will be contacted to conduct this measurement every six months.

9.2   All maintenance activities will be documented in writing. At a minimum the documentation will include:

9.2.1   Date of service
9.2.2   Identity of equipment serviced
9.2.3   Type of task/service preformed
9.2.4   Signature of person performing the service

# County of Riverside – RUHS Public Health
## DISEASE REPORTING REQUIREMENTS

### DISEASES TO BE REPORTED __IMMEDIATELY__ BY TELEPHONE

ANTHRAX, human or animal+
BOTULISM (Infant, Foodborne, Wound, Other)+
BRUCELLOSIS, human+
CHOLERA*
CIGUATERA FISH POISONING (Community acquired only)
CORONAVIRUS DISEASE 2019 (COVID-19)
DIPHTHERIA+
DOMOIC ACID POISONING (Amnesic shellfish poisoning)
FLAVIVIRIUS INFECTION of undetermined species
HEMOLYTIC UREMIC SYNDROME

INFLUENZA DUE TO NOVEL STRAINS, (human)+
MEASLES (Rubeola)+
MENINGOCOCCAL INFECTIONS
MIDDLE EAST RESPIRATORY SYNDROME (MERS)
NOVEL CORONAVIRUS INFECTION
NOVEL VIRUS INFECTION with pandemic potential**
PARALYTIC SHELLFISH POISONING
PLAGUE, Human or Animal+
RABIES, Human or Animal+
SCOMBROID FISH POISONING

SHIGA TOXIN (detected in feces)+
SMALLPOX (Variola)+
TULAREMIA, human+
VIRAL HEMORRHAGIC FEVERS, human or animal (e.g., Crimean-Congo, Ebola, Lassa and Marburg Viruses)+
OCCURENCE OF ANY UNUSUAL DISEASE
OUTBREAKS OF ANY DISEASE (including Foodborne and any diseases not listed in Section 2500. Specify if institutional and/or community setting. Two or more cases from separate households = an outbreak.)

### DISEASES OR SUSPECTED DISEASES TO BE REPORTED WITHIN __ONE DAY__ OF IDENTIFICATION

BABESIOSIS+
CAMPYLOBACTERIOSIS*+
CHICKEN POX (Varicella)(Outbreaks, hospitalizations and deaths)
CHIKUNGUNYA Virus Infection
CRYPTOSPORIDIOSIS+
DENGUE VIRUS INFECTION+
ENCEPHALITIS+, Specify Etiology: Viral, Bacterial, Fungal, Parasitic
*ESCHERICHIA COLI:* shiga toxin producing (STEC) including *E. coli* O157 *+
FOODBORNE DISEASE
*HAEMOPHILUS INFLUENZAE*, Invasive Disease all serotypes (report an incident if < 5 years of age)+

HANTAVIRUS INFECTION+
HEPATITIS A, acute infection *[1]+
HUMAN IMMUNODEFICIENCY VIRUS (HIV), Acute Infection++
LISTERIOSIS+
MALARIA+
MENINGITIS, Specify Etiology: Viral, Bacterial, Fungal, Parasitic
PARATYPHOID FEVER
PERTUSSIS (Whooping cough)+
POLIOVIRUS INFECTION+
PSITTACOSIS+
Q FEVER+

RELAPSING FEVER+
SALMONELLOSIS (Other than Typhoid Fever)*+
SHIGELLOSIS*+
SYPHILIS (All stages, including congenital)+
TRICHINOSIS+
TUBERCULOSIS*+[3]
TYPHOID FEVER, Cases and Carriers*+
*VIBRIO* INFECTIONS *+
WEST NILE VIRUS (WNV) infection, acute +
YERSINIOSIS+
YELLOW FEVER+
ZIKA VIRUS INFECTION+

### DISEASES TO BE REPORTED WITHIN __SEVEN CALENDAR DAYS__

ANAPLASMOSIS+
BRUCELLOSIS, animal (except infections due to Brucella canis)+
CHANCROID+
COCCIDIOIDOMYCOSIS+
CREUTZFELDT-JAKOB DISEASE (CJD) and other Transmissible Spongiform Encephalopathies (TSE)
CYCLOSPORIASIS+
CYSTICERCOSIS OR TAENIASIS
EHRLICHIOSIS+
GIARDIASIS+
GONOCOCCAL INFECTION
HEPATITIS B (Specify acute, chronic or perinatal) [1]*+++

HEPATITIS C (Specify acute, chronic or perinatal)[2]+
HEPATITIS D (Delta) (Specify acute case or chronic)[1]+
HEPATITIS E, acute infection [1]+
HUMAN IMMUNODEFICIENCY VIRUS (HIV) infection, any stage
HUMAN IMMUNODEFICIENCY VIRUS (HIV), (Non-acute infection)
HUMAN IMMUNODEFICIENCY VIRUS (HIV) infection, progression to stage 3 (AIDS)
INFLUENZA (ICU and Associated deaths in laboratory-confirmed cases for ages 0-64 years)***
LEGIONELLOSIS+
LEPROSY (Hansen's Disease) Occurrence of any unusual disease

LEPTOSPIROSIS+
LYME DISEASE
MUMPS+
RESPIRATORY SYNCYTIAL VIRUS (RSV)-associated deaths in laboratory-confirmed cases < 5 years of age)
RICKETTSIAL DISEASES (non-Rocky Mountain Spotted Fever), including Typhus and Typhus-like Illness)+
ROCKY MOUNTAIN SPOTTED FEVER+
RUBELLA (German Measles)+
RUBELLA SYNDROME, Congenital
TETANUS
TULAREMIA, animal+

### REPORTABLE NON-COMMUNICABLE DISEASES AND CONDITIONS

ALZHEIMER'S DISEASE AND RELATED CONDITIONS
ANIMAL BITE (SEE REVERSE)

CANCER (SEE PAGE 3)***
DISORDERS CHARACTERIZED BY LAPSES OF CONSCIOUSNESS

MICROCEPHALY (ANY CAUSE)***
PESTICIDE EXPOSURE (SEE REVERSE)

---

\*   Essential to include occupation
\+   Must also be reported by laboratories
[1]  Viral Hepatitis: All Hepatitis reports must include lab results and the date of onset. Hepatitis A: include occupation. Hepatitis B: if pregnant, include EDC.
[2]  Please differentiate Acute Hepatitis C cases on the CMR. Chronic Hepatitis C indicated by positive anti-HCV test in an asymptomatic person should still be reported and should include confirmatory test results and supporting labs.
[3]  Special Requirements for TB:
   1. Health care provider is responsible for reporting TB results from out-of-state labs.
   2. Laboratories that isolate *Mycobacterium tuberculosis* from a patient's specimen must follow requirements for submission of a culture to the Public Health Lab and drug susceptibility testing (Copy of requirements available upon request).
   3. Active or suspected cases require approval of the Health Officer (or designee) prior to discharge/transfer from a health care facility.
   4. Newly infected persons listed below must be reported:
      a) TB Converters: Those with an increase in the size of the tuberculin reaction by at least 10 mm of induration within 2 years from a documented negative to positive TST, or those who have a documented negative IGRA followed by a positive IGRA within a 2-year period.
      b) Children 3 years of age or younger with a positive TB skin test (5mm or greater).
\**  Pandemic potential: The potential ability of a pathogen to spread easily and efficiently in the human population, crossing international borders, and usually affecting many people. Such pathogens may be associated with severe illness and death.
++ Acute HIV Infection: Detectable HIV-1 RNA or p24 antigen in serum or plasma in the setting of a negative or indeterminate HIV-1 antibody test result for patients tested using a currently approved HIV test algorithm, as defined in section 2641.57.
\*** Locally reportable by order of the Riverside County Public Health Officer

**Title 17, California Code of Regulations (CCR) §2500, §2593, §2641-2643, and §2800-2812**
**Reportable Diseases and Conditions**

**State law requires that health care providers report diseases of public health importance.  Physicians, nurses, dentists, coroners, laboratory directors, school officials and other persons knowing of a CASE OR SUSPECTED CASE of any of the following diseases or conditions are required to report them to the local Department of Public Health.**

- §2500(b) It shall be the duty of every health care provider, knowing or in attendance on a case or suspected case of any of the diseases or conditions listed on the front, to report to the local health officer for the jurisdiction where the patient resides.  Where no health care provider is in attendance, any individual having knowledge of a person who is suspected to be suffering from one of the diseases or conditions listed on the front may make such a report to the local health officer for the jurisdiction where the patient resides.
- §2500(c) The administrator of each health facility, clinic or other setting where more than one health care provider may know of a case, a suspected case or an outbreak of disease within the facility shall establish and be responsible for administrative procedures to assure that reports are made to the local health officer.
- §2500(a)(14) "Health care provider" means a physician and surgeon, a veterinarian, a podiatrist, a nurse practitioner, a physician assistant, a registered nurse, a nurse midwife, a school nurse, an infection control practitioner, a medical examiner, a coroner or dentist.

## HOW TO REPORT ALL DISEASES, EXCEPT HIV CASES:

**Extremely urgent conditions:** (i.e., Anthrax, Botulism, Brucellosis, Cholera, Dengue, Diphtheria, Outbreaks of **any** kind - including Foodborne, Plague, Rabies, Relapsing Fever, and Smallpox) are to be reported immediately by telephone, 24 hours a day, to the appropriate number.

**Urgent conditions:** Foodborne illnesses should be reported by telephone or fax within one (1) working day of identification of the case or suspected case.

**Non-urgent conditions** are to be reported within seven (7) calendar days from the time of identification.

*Although it is not mandatory at this time, health care providers are encouraged to enroll in the California Reportable Disease Exchange (CalREDIE) and submit reports electronically.*

The appropriate Confidential Morbidity Report (CMR) form must be <u>filled</u> out.  **All** the requested information is essential, including the lab information for selected diseases.  All phone, fax, and mailed reports are to be made to the Disease Control Office, with the following exceptions: Reports of sexually transmitted diseases are to be faxed to (951) 358-6007 or mailed to the STD Program Office.

Confidential Morbidity Report (CMR) forms are available online at <u>www.rivco-diseasecontrol.org</u> . Please use the COVID-19 CMR for reporting Novel Coronavirus and MIS-COVID

**Disease Control**
P.O. Box 7600
Riverside, CA  92513-7600
**Phone:  (951) 358-5107**
**Confidential Fax: (951) 358-5446**

**HIV/STD Program**
P.O. Box 7600
Riverside, CA  92513-7600
**Phone: (951) 358-7820**
**Fax: (951) 358-6007**

> **NIGHT AND WEEKEND**
> **EMERGENCIES**
> **(951) 782-2974**

## HIV REPORTING BY HEALTH CARE PROVIDERS §2641.30-2643.20

Human Immunodeficiency Virus (HIV) infection at all stages is reportable by traceable mail, person- to-person transfer, or electronically within seven calendar days. For complete HIV-specific reporting requirements, see <u>Title 17, CCR, §2641.30-2643.20</u> and the <u>California Department of Public Health's HIV Surveillance and Case Reporting Resource</u> page (<u>https://www.cdph.ca.gov/Programs/CID/DOA/Pages/OA_case_surveillance_resources.aspx</u>)

## HOW TO REPORT ALL HIV CASES:
Call (951) 358-7820 to report
Mail in a double envelope stamped **"Confidential"** to:
HIV/STD Surveillance Unit
P. O. Box 7600
Riverside, CA 92513-7600
**OR**
Fax to (951)358-6007, if faxing please call (951)358-7820 to confirm receipt

**ALWAYS** use **CDPH form 8641-A rev. 05/13 (Adult)** to report cases 13 years of age and older. For pediatric cases call (951) 358-7820 to report.
*It is recommended that mailed reports are sent via Certified or Registered mail for tracking purposes.*

**ANIMAL BITE:**  Animal bites by a species subject to rabies are reportable in order to identify persons potentially requiring prophylaxis for rabies.  Additionally, vicious animals identified may be controlled by this regulation and local ordinances (California Administration Code, Title 17, Sections 2606 et seq.: Health and Safety Code Sections 121575-120435).  Reports can be filed with the local Animal Control Agency or Humane Society.  The County Animal Control office may assist in filing your report.  Call (951) 358-7327 or (951) 358-7387.
Report form is available at www.rivco-diseasecontrol.org

**PESTICIDE EXPOSURE:**  The Health and Safety Code, Section 105200, requires that a physician who knows or who has reason to believe that a patient has a pesticide-related illness or condition must report the case to the local County Health Office by phone within 24 hours.  For occupational exposure there is an additional requirement to send the "Doctor's First Report of Occupational Injury or Illness" to the Department of Public Health within 7 days.  Phone reports may be made to (951) 358-5107; or faxed to (951) 358-5102.  Copies of the required report forms (OEH-700 [Rev. 9/06] and California Form 5021 [Rev. 4] 1992) may be obtained from the same office.
Report form is available at http://www.oehha.ca.gov/pesticides/programs/Pestrpt.html

**REPORTING DISORDERS CHARACTERIZED BY LAPSES OF CONSCIOUSNESS:** Health and Safety Code 103900 requires: Every physician and surgeon shall report immediately to the local health officer in writing, the name, date of birth, and address of every patient at least 14 years of age or older whom the physician and surgeon has diagnosed as having a case of a disorder characterized by lapses of consciousness. However, if a physician and surgeon reasonably and in good faith believes that the reporting of a patient will serve the public interest, he or she may report a patient's condition even if it may not be required under the department's definition of disorders characterized by lapses of consciousness pursuant to subdivision (d).

**CANCER REPORTING:**  Cancer, including benign and borderline brain tumors (except (1) basal and squamous skin cancer unless occurring on genitalia, and (2) carcinoma in-situ and CIN III of the Cervix) (§2593)***

**LOCALLY REPORTABLE DISEASES (if applicable):**

SEVERE INFLUENZA (ICU or fatal cases) 0-64 years of age ***

* The Confidential Morbidity Report (CMR) is designed for health care providers to report those diseases mandated by Title 17, California Code of Regulations (CCR). The CMR form can be found here: Communicable Disease Reporting Forms. Failure to report is a misdemeanor (Health & Safety Code §120295) and is a citable offense under the Medical Board of California Citation and Fine Program (Title 16, CCR, §1364.10 and 1364.11).

** Failure to report is a citable offense and subject to civil penalty ($250) (Health and Safety Code §105200).

*** The Confidential Physician Cancer Reporting Form may also be used. See Physician Reporting Requirements for Cancer Reporting in CA at: www.ccrcal.org.

# EXHIBIT C

**RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**
**CORRECTIONS DIVISION POLICY MANUAL**

| | |
|---|---|
| **TITLE:**     **Cleaning and Maintenance** | **NUMBER: 501.04** |

**POLICY:**     Riverside County correctional facilities shall be maintained in a manner that promotes sanitation, safety and security. All facilities shall be routinely cleaned and inspected for items needing repair. Facilities will develop procedures for requesting maintenance, repairs or installations.

**REFERENCE:**     CAC Title 15, section 1280 and RSD Form 531
**Cross-Reference:**   Department Policy 502.04

**GUIDELINES**

1.0    Cleaning Schedule

     1.1    A weekly cleaning schedule will be posted in all housing units for review of cleaning assignments.

         ➢   In addition, each facility shall implement a cleaning schedule for each area of the facility. Assignments will be determined by the number of staff, and/or daily activity levels in the jail.
         ➢   Furthermore, disinfectant cleaning solution will be available for each housing area to clean and sanitize dayroom common use areas and cells. Cleaning supplies shall be inspected and restocked during security checks.

2.0    Incarcerated Worker Duties

     2.1    Incarcerated workers will be utilized as custodians to perform cleaning functions within the jail. Incarcerated workers will perform custodian functions in a housing unit, administrative office, or as pre-determined by each facility commander.

     2.2    Incarcerated workers will be required to sweep, mop, buff and wax floors in the housing unit day room, vacuum areas as specified by the facility procedure.

     2.3    Incarcerated workers will be assigned to clean staff restrooms daily or by each shift as needed.

     2.4    Incarcerated workers will be assigned to clean all Safety Cells on a daily basis and after removal from the cell.

         ➢   The Intake Sergeant is required to visually inspect the cell prior to placement.
         ➢   This inspection will be documented on the Safety Cell/Specialty Housing Log (RSD Form 531).

3.0    Maintenance Repair Requests

     3.1    All maintenance problems or repairs will be reported and documented on the facility designated maintenance log or repair form. Each facility will designate a supervisor

**TITLE:**    **Cleaning and Maintenance**                          **NUMBER: 501.04**

responsible for monitoring the progress of repairs.

3.2    Emergency repairs may be required after-hours by maintenance personnel, if the shift supervisor determines that an after-hour call out is necessary. Each facility will be governed by facility specific procedures for emergency maintenance service calls.

4.0    Modifications to a Facility

4.1    Any modifications made to the structure or design of a correctional facility needs to be reviewed by Sheriff's Project Management Office (PMO) and requires final approval by the Corrections Chief Deputy. This includes any tinting of the Pod or Dayroom windows, removing fixtures or rekeying lock mechanisms.

# EXHIBIT D

**RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**
**CORRECTIONS DIVISION POLICY MANUAL**

---

**TITLE:    Hygiene**                                                **NUMBER: 507.03**

---

**POLICY:**      The Riverside County Sheriff's Department Corrections Division shall develop procedures for incarcerated persons to receive showers, personal hygiene, and hair and nail care items.

---

**REFERENCE:**   Penal Code Section: 4023.5, CCR Title 15, sections 1265, 1266, and 1267
**CROSS-REFERENCE:**      H&S, section 459; B&P, section 6586.5(H)

---

**GUIDELINES**

1.0    Booking Pack

    1.1    Each person shall receive an "booking pack" from the Booking/Intake Deputy, prior to movement to their housing unit.

        1.1.1    Booking packs shall at a minimum contain the following items:

            ➢ Short handle toothbrush
            ➢ Clear gel toothpaste
            ➢ Soap
            ➢ 5-inch comb
            ➢ Safety razor
            ➢ 2 tablets of non-aspirin (1pack)
            ➢  Rules and medical instructions

    1.2    Incarcerated persons shall not be required to share any personal care items.

        1.2.1    Soap will be provided at no cost to incarcerated persons. Custody staff will provide soap weekly and upon request.

    1.3    Feminine care items sanitary napkins and/or tampons shall be made available, with no maximum allowance, as needed at no cost to incarcerated persons.

    1.4    Special hygiene items, i.e. special soaps, lotions, shampoo's, etc.; may be authorized by medical staff, as needed.

    1.5    Pain relievers and safety razors may be removed from the booking packs of incarcerated persons in the following categories:

        ➢ Suicide Watch
        ➢ Mental Health Housing
        ➢ Disciplinary Housing

2.0    Showers

    2.1    Custody staff shall permit incarcerated persons to shower upon assignment to a

**TITLE:   Hygiene**                                                **NUMBER: 507.03**

housing unit and at least every other day or more often if possible.

    2.1.1  If showering is prohibited, it must be approved by the floor sergeant and the reason for prohibition shall be documented in the person's class notes.

3.0    Hair and Nail Care

    3.1    Hair care services shall be available at a minimum of once a month. A contracted professional barber will be available to provide basic haircut services up to two times per month, as scheduled by each facility Program Coordinator.

    3.2    Custody staff shall verify that hair and nail care equipment is properly sterilized.

> ➢ All hair and nail equipment will be sprayed with the provided disinfectant after each use and prior to storage.
> ➢ At no time shall an incarcerated person be given scissors to cut their hair or another person's hair.

    3.3    Custody staff shall verify proper security measures are in place for the accountability of hair and nail care items.

> ➢ Hair and nail clippers should only be used within the designated areas of each facility. Designated areas should be outside of the dayrooms.

    3.4    Custody staff shall establish a sign-up list for those desiring haircut services by the contracted barber prior to each scheduled session.

    3.4.1  Administrative Housing persons and those with a court order for a haircut should be given priority over other classifications of incarcerated persons.

    3.5    Incarcerated persons may be added to the list during the session as needed by the facility; not to exceed the maximum three-hour block per session per facility.

    3.6    Custody staff shall inventory the contracted barber's equipment, to include clippers, a comb, and one pair of scissors, upon entering and exiting the facility.

    3.7    Custody staff shall verify the contracted barber submits a completed Haircut Log (P507.03 Attachment 2) after each scheduled haircut session, to include the person's name, booking number, date and time of services provided, session start and end time, barber signature and date, and deputy escort signature, prior to leaving the facility. Completed Inmate Haircut Logs shall be submitted to the facility Program Coordinator. The facility Program Coordinators will submit completed logs to the Sheriff's Inmate Training and Education Bureau (SITE-B) Accounting monthly for archiving.

    3.8    Incarcerated persons, except those who may not shave for reasons of identification in court, shall be allowed to shave daily.

**TITLE:    Hygiene**                                                                 **NUMBER: 507.03**

4.0    Methicillin-Resistant Staphylococcus Aureus (MRSA) Information

    4.1    Information on MRSA is available on the Dedicated Inmate Channel for incarcerated persons to review. Refer to Department Policy 507.22 (Dedicated Inmate Channel).