KELLY A. MORAN, Chief Deputy County Counsel (SBN 267147)
OFFICE OF COUNTY COUNSEL
3960 Orange Street, Suite 500
Riverside, CA 92501-3674
Telephone: (951) 955-6300
Facsimile: (951) 955-6363
Email: kmoran@rivco.org

Attorneys for Defendant COUNTY OF RIVERSIDE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

QUINTON GRAY, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

COUNTY OF RIVERSIDE,
Defendant.

CASE NO. EDCV13-0444 VAP (OP)

**CLASS ACTION**

**JOINT STIPULATION RE COURT FINDING THAT THE COUNTY IS IN SUBSTANTIAL COMPLIANCE WITH MATERIAL COMPONENTS OF THE REMEDIAL PLAN AND REQUEST FOR SUSPENSION OF MONITORING OF SUCH COMPONENTS**

**JUDGE:** Hon. Virginia Phillips
**DATE:** TBD
**TIME:** TBD
**COURTROOM:** 8A
**LOCATION:** 350 W. First Street, Los Angeles, CA 90012

**TO THE HONORABLE COURT:**

Counsel for PLAINTIFFS, QUINTON GRAY, et al., on behalf of themselves and all others similarly situated, and counsel for DEFENDANT, COUNTY OF RIVERSIDE (hereinafter "County") hereby offer the following Joint Stipulation re Court Finding that the County is in Substantial Compliance with Material Components of the Remedial Plan and Request for Suspension of Monitoring of Such Components:

1. As the Court is aware, this case was filed on March 8, 2013. (Dkt. 1.) By way of their Complaint, Plaintiffs alleged that the County failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. A Third Amended Complaint, filed on November 24, 2015, added a claim of discrimination against certain people with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (Dkt. 150.)

2. On September 2, 2014, the Court denied the County's Motion to Dismiss and granted Plaintiffs' Motion for Class Certification. (Dkt. 131.)

3. The Plaintiff class consists of "all prisoners . . . who are now, or will be in the future, subjected to the medical and mental health policies and practices of Riverside County." Consent Decree, ¶ 3. The medical subclass comprises "[a]ll prisoners . . . who are now, or will in the future be, subjected to the medical care policies and practices of the Riverside Jails"; the mental health subclass comprises "[a]ll prisoners . . . who are now, or will in the future be, subjected to the mental health care policies and practices of the Riverside Jails"; and the disabilities subclass consists of "all prisoners who are now, or will in the future be, subjected to policies and practices of the Riverside jails regarding specialized or sheltered housing for prisoners due to their mobility impairments and need for assistive devices, and the provision and confiscation of accommodations for prisoners with mobility impairments." (Dkt. 150.)

4. In January 2015, the parties suspended regular and expert discovery for the purpose of settlement negotiations and hired neutral experts "to determine whether the health care currently provided poses a significant risk of serious harm to prisoners confined in the Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the U.S. Constitution." Consent Decree, ¶ 4.

5. The parties jointly selected Dr. Scott Allen, Professor of Medicine at the University of California-Riverside, as the expert on medical care and Dr. Bruce Gage, Chief Psychiatrist of the Washington State Department of Corrections, as the expert on mental health care.[1] They submitted their final reports to the parties on July 15, 2015. The parties subsequently negotiated a Remedial Plan to address the identified deficiencies and asked the Court to enter a Consent Decree to resolve Plaintiffs' claims. The parties further agreed that the Court would retain jurisdiction to enforce the terms of its judgment. Consent Decree, ¶ 30. The Consent Decree also guarantees access to information for Plaintiffs and the experts and requires the County, "in consultation and collaboration with Plaintiffs' counsel, [to] develop and implement appropriate and adequate plans, policies, and practices to ensure compliance with the Remedial Plan." *Id.*, ¶¶ 10, 15, 20. On June 7, 2016, the Court issued

[1] Dr. Gage, having performed his duties with distinction for several years, formally stepped down in 2021. Thereafter, on March 24, 2021, the parties jointly requested and this Court thus appointed Mary Perrien as the mental health expert to replace Dr. Gage. (Dkt. 207 & 208.) Dr. Perrien, having served in this role for the past two years, has now formally stepped down as well. Accordingly, the parties jointly requested and this Court appointed Dr. Debra Pinals as the expert on mental health care. (Dkt. 223.)

an Order approving the Consent Decree and requiring the County to implement the attached Remedial Plan. (Dkt. 173.)

6. Since that time, the experts have made numerous trips to the jails and issued reports regarding their findings. By and through their counsel, Plaintiffs have done the same, engaging in fruitful negotiations with County officials from the Sheriff's Department as well as medical and behavioral health leadership in the County, as the County has worked to implement the Remedial Plan.

7. Therefore, following over seven years of work and collaboration by and between Plaintiffs' counsel, the County, and the Court appointed experts, the parties now jointly agree that the County has maintained substantial compliance as related to the following provisions of the Remedial Plan:

a. I-A-1: All inmates who are to be housed shall be screened on arrival in custody by Registered Nurses (RNs). RN screening shall take place prior to placement in jail housing. At the Blythe Jail, if RNs are not on duty at time of booking, the inmate shall be seen and screened by an RN within 14 hours of booking.

b. I-B-1: Custody and health care staff shall make health care request forms available to inmates in all housing units, dayrooms, program rooms and libraries.

c. I-B-2: Locked boxes shall be placed in all housing units for inmates to submit health care request forms. The boxes shall be readily accessible to all inmates. The boxes shall be emptied by health care staff at least once every 24 hours.

Health care staff shall also pick up completed health care request forms directly from inmates in sheltered housing at least once every 24 hours or if an inmate does not have the opportunity to deposit the request in the locked box. Health care staff shall collect completed health care request forms. When institutional security prevents health care staff from entering the dayroom, custody staff may collect the request forms so long as health care staff are present, observe the collection, and receive the forms directly from the custody staff.

d. I-B-5: Providers may make referrals for follow-up appointments without requiring inmates to file a health care request form.

e. I-B-8: With the exception of telemedicine appointments, all nursing sick call and provider encounters shall occur in a room with an examination table, sink, proper lighting, proper equipment, and with a medical record or medical record access. All telemedicine appointments shall occur in a room with the appropriate equipment and space for the patient and health care staff at the jail, as well as any needed computer or records access.[2]

f. I-C-5: Prescriptions are filled by the Riverside University Medical Center (RUMC) pharmacy on weekdays. In addition, every jail shall maintain a stock supply of medications, as determined by the Medical Director and the Pharmacy and consistent with California State Board of Pharmacy regulations

[2] The parties stipulate that the provisions from section I-B-8 not reprinted herein shall remain in effect.

for newly arrived patients or missed deliveries. Where normally established medication delivery times would compromise the medical care of the inmate, staff shall call the RUMC pharmacy emergency call line to obtain medications by the following day.

g. I-D-3: The County will no longer affix a label to doors of holding cells that indicates mental health status of inmates held inside (such as "PSYCH"); instead, the County will use wristbands, covered clipboards, or other means of identification that are accessible to appropriate staff on a need-to-know basis but not readily discernable to others.

h. I-E-1: The County shall provide an Electronic Health Record System which allows mental health and medical staff to view the medical and mental health information about each patient in a single record. This shall be accomplished within 12 months of the date the Consent Decree is issued by the Court.

i. I-E-2: Until such a system is implemented, the County shall develop and implement policies and procedures to ensure that medical staff have access to mental health information and mental health staff have access to medical information, as needed to perform their clinical duties. Medical and mental health staff shall be trained in these policies and procedures within one month of the date the Consent Decree is issued by the Court.

j. I-E-3: The County shall develop and implement policies and procedures to monitor the deployment of the CHS Electronic Health Records to ensure the

records system is modified, maintained, and improved as needed on an ongoing basis, including ongoing information technology support for the network infrastructure and end users.

k. II-E-2: Adequate clinical space includes the space needed reasonably to perform clinical functions as well as an examination table, sink, proper lighting, proper equipment, and access to health care records.

l. III-D-5: Clinicians evaluating inmates in safety cells or restraint chairs or providing services shall speak to them face to face, and not through a closed door, except where the likelihood of violence by the inmate warrants.

m. IV-1: Inmates with mobility impairments shall not be placed, solely due to their disability or use of assistive devices, in locations with fewer privileges, less programming, or more restrictions on movement, property, or activities than they would experience if housed based on factors unrelated to their disability or use of assistive devices. This requirement shall not prevent the County from placing in sheltered housing disabled inmates who are unable to attend to their basic daily living needs (such as eating and personal hygiene) without assistance.

8. Now, pursuant to Paragraph 33 of the Consent Decree, the parties jointly stipulate to and request a finding that Defendant is in substantial compliance with the above material components of the Remedial Plan and has maintained substantial compliance for a period of at least twelve months.

9. Accordingly, the parties further jointly stipulate to and request a suspension of monitoring of those material components listed in paragraph 7(a) – (m) above.

10. Pursuant to Paragraph 33 of the Consent Decree, the parties continue to agree that if, at any time, Plaintiffs present evidence that the County is no longer in substantial compliance with the material components listed in paragraph 7(a) – (m) above, the Court may order additional relief including but not limited to reinstating full monitoring.

11. The parties further stipulate and agree that all other provisions of the Remedial Plan shall remain in effect until otherwise addressed before this Court.

12. The parties have negotiated in good faith and agree that this relief meets the requirements of 18 U.S.C. § 3626: the relief is narrowly drawn, extends no further than necessary to ensure the protection of the federal constitutional and statutory rights of Plaintiffs, and is the least intrusive means necessary to accomplish those objectives.

**IT IS SO AGREED AND STIPULATED**

PRISON LAW OFFICE

Dated: July 2, 2023

By: /s/ *Sara Norman*
SARA NORMAN
THE PRISON LAW OFFICE
Attorneys for Plaintiffs,
QUINTON GRAY et al.

OFFICE OF COUNTY COUNSEL

Dated: July 2, 2023

By: /s/ *Kelly Moran*
KELLY A. MORAN
Attorneys for Defendant,
COUNTY OF RIVERSIDE

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, KELLY A. MORAN, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ Kelly A. Moran

## PROOF OF SERVICE

**United States District Court Case No. 5:13-cv-00444-VAP-OP**

I, the undersigned, say that I am a citizen of the United States and am employed in the county of Riverside, over the age of 18 years and not a party to the within action or proceeding; that my business address is: 3960 Orange Street, Suite 500, Riverside, CA 92501-3611.

On July 3, 2023 , a true and correct copy of the foregoing document entitled:

**JOINT STIPULATION RE COURT FINDING THAT THE COUNTY IS IN SUBSTANTIAL COMPLIANCE WITH MATERIAL COMPONENTS OF THE REMEDIAL PLAN AND REQUEST FOR SUSPENSION OF MONITORING OF SUCH COMPONENTS**

was served on all parties pursuant to FRCivP 5(b) as follows:

| | |
|---|---|
| Donald Specter<br>Sara Linda Norman<br>Prison Law Office<br>1917 Fifth Street<br>Berkeley, CA 94710<br>510-280-2621<br>Fax: 510-280-2704<br>Email: dspecter@prisonlaw.com<br>snorman@prisonlaw.com | Arthur Kenneth Cunningham<br>Jackson Lewis P.C.<br>200 Spectrum Center Drive, Suite 500<br>Irvine, CA 92618-5005<br>Telephone: (949) 885-5260<br>Email:<br>Arthur.Cunningham@JacksonLewis.com |
| Shawn Everett Hanson<br>Akin Gump Strauss Hauer and Feld LLP<br>580 California Street 15th Floor<br>San Francisco, CA 94104-1036<br>415-765-9500<br>Fax: 415-765-9501<br>Email: shanson@akingump.com | Christopher D Lockwood<br>Arias and Lockwood<br>1881 South Business Center Drive Suite 9A<br>San Bernardino, CA 92408<br>909-890-0125 Fax: 909-890-0185<br>Email:<br>christopher.Lockwood@ariaslockwood.com |
| Danielle C Ginty<br>Akin Gump Strauss Hauer & Feld LLP<br>580 California Street Suite 1500<br>San Francisco, CA 94104<br>415-765-9500<br>Fax: 415-765-9501<br>Email: dginty@akingump.com | Stephanie Joy M Tanada<br>Jackson Lewis P.C.<br>200 Spectrum Center Drive, Suite 500<br>Irvine, CA 92618-5005<br>Telephone: (949) 885-5260<br>Email: Stephanie.Tanada@Jacksonlewis.com |

☒ TO BE SERVED BY THE COURT VIA THE NOTICE OF ELECTRONIC FILING (NEF). Pursuant to L.R. 5-3.2.3, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the addresses stated.

I declare under penalty of perjury under the laws of the United States of America, State of California that the foregoing is true and correct.

Executed on __July 3, 2023__, at Riverside, California.

/s/ *Michelle Quiroz*

MICHELLE QUIROZ